**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE INSULIN PRICING LITIGATION | Case No. 2:17-cv-00699 (BRM) (ESK) |
| | **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

      Before the Court is Defendants Novo Nordisk, Inc. ("Novo Nordisk"), Sanofi-Aventis U.S. LCC ("Sanofi"), and Eli Lilly and Company's ("Eli Lilly") (collectively, "Defendants") Partial Motion to Dismiss the putative Plaintiffs' ("Plaintiffs") Third Amended Class Action Complaint ("Third Amended Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 422.) Plaintiffs oppose the motion (ECF No. 455), and Defendants filed a reply (ECF No. 468). Having reviewed the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Defendants' Partial Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## I.   BACKGROUND[1]

      For the purpose of this motion to dismiss, the Court accepts the factual allegations in the Third Amended Complaint as true and draws all inferences in the light most favorable to Plaintiffs.

---

[1] The factual and procedural backgrounds of this matter are well-known to the parties and were previously recounted by the Court in its Opinion granting in part and denying in part Defendants' Motion to Dismiss the First Amended Complaint (ECF No. 252), as well as the Court's Opinion granting in part and denying in part Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 304). Therefore, the Court includes only the facts and procedural background relevant to this Motion.

*See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

Plaintiffs are 80 individuals who filed the Third Amended Complaint on behalf of themselves and a proposed nationwide class of analog insulin consumers. (ECF No. 411 ¶¶ 25–185.) Plaintiffs bring this action on behalf of themselves and all others similarly situated under Federal Rule of Civil Procedure 23(a) and 23(b)(3). (*Id.* ¶ 322.) Plaintiffs define their class as:

> All individual persons in the United States and its territories who paid any portion of the purchase price for a prescription of Apidra, Basaglar, Fiasp, Humalog, Lantus, Levemir, Novolog, Tresiba, and/or Toujeo at a price calculated by reference to a list price, AWP (Average Wholesale Price)[2], or WAC (Wholesale Acquisition Price) for purposes other than resale.

(*Id.*) Specifically, the class includes uninsured consumers, consumers in high-deductible health plans, consumers who reach the Medicare Part D donut hole, and consumers with high coinsurance rates. (*Id.* ¶ 325.) Defendants are pharmaceutical companies headquartered in the United States. (*Id.* ¶¶ 186–88.) Defendants research, develop, and manufacture prescription medications. (*Id.*) Defendant Eli Lilly manufactures Humalog and Basaglar; Defendant Novo Nordisk manufactures Fiasp, Novolog, Levemir, and Tresiba; and Defendant Sanofi-Aventis manufactures Apidra, Lantus, and Toujeo. (*Id.*)

On March 29, 2018, Plaintiffs filed the First Amended Class Action Complaint against Defendants (ECF No. 131), and on May 14, 2018, Defendants moved to dismiss (ECF No. 158).

---

[2] The Plaintiffs frequently use the terms "benchmark price" and "sticker price" to refer to the AWP. (*See, e.g.*, ECF No. 411 ¶¶ 2, 3, 202, 343.)

In the First Amended Complaint, Plaintiffs brought claims under the federal Racketeer Influenced and Corrupt Organization Act ("RICO") pursuant to 18 U.S.C. §§ 1961, *et seq*. (ECF No. 131.) The Court held oral argument on January 22, 2019. (ECF No. 247.) On February 15, 2019, the Court issued an Opinion and Order (the "February 2019 Order") granting in part and denying in part Defendants' Motion to Dismiss the First Amended Class Action Complaint. (ECF Nos. 252–53.) In the February 2019 Order, the Court dismissed Plaintiffs' federal RICO claims, finding "[a]lthough Plaintiffs have adequately pled the various elements of a RICO claim," they were indirect purchasers and, therefore, they "lack[ed] standing to maintain [the] action." (ECF No. 252 at 25.)

On March 18, 2019, Plaintiffs filed the Second Amended Class Action Complaint ("Second Amended Complaint") alleging forty-nine counts against Defendants. (ECF No. 255.) In the Second Amended Complaint, Plaintiffs sought an injunction "to prevent [Defendants] from reporting benchmark prices that do not approximate their true net prices." (*Id.* at 142.) Plaintiffs also included claims relating to additional insulin products not alleged in the First Amended Complaint. (*Compare* ECF No. 131 *with* ECF No. 255.) Further, Plaintiffs included several state consumer protection law claims under the state laws of Arizona, California, Colorado, Georgia, Louisiana, Minnesota, Mississippi, Utah, Washington, and West Virginia. (ECF No. 225.) On May 17, 2019, Defendants filed a Partial Motion to Dismiss the Second Amended Complaint. (ECF No. 263.) Plaintiffs opposed the motion (ECF No. 269), and Defendants replied (ECF No. 273).

On February 20, 2020, the Court issued an Opinion and Order (the "February 2020 Order") granting in part and denying in part Defendants' Motion to Dismiss the Second Amended Complaint. (ECF Nos. 304–05.) In the February 2020 Order, the Court held that a private party may not seek equitable relief under RICO and dismissed Plaintiffs' request for injunctive relief

under RICO. (ECF No. 304 at 7.) The Court also denied Defendants' Partial Motion to Dismiss the claims related to the new insulin products, finding the Second Amended Complaint adequately alleged a detailed depiction of a fraudulent scheme as it related to the added insulin products. (*Id.* at 8.) The Court granted Defendants' Partial Motion to Dismiss with respect to state consumer protection law causes of action under the state laws of Arizona, Georgia, Mississippi, Washington, and West Virginia, but the Court denied Defendants' Partial Motion to Dismiss with respect to state consumer protection law causes of action under the state laws of Colorado and Utah. (ECF No. 305 at 1.) The Court further granted Defendants' Partial Motion to Dismiss to the extent that: (1) Plaintiffs sought disgorgement and restitution under California law; (2) Plaintiffs sought injunctive relief under Louisiana law; and (3) Plaintiff's sought an award of monetary damages under Minnesota law. (*Id.* at 1–2.)

On April 20, 2021, Plaintiffs filed the Third Amended Complaint, now alleging the following: violation of Arizona's Civil Racketeering Statute, Ariz. Rev. Stat. §§ 13-2314.04, *et seq.*, (Count Three); violation of Colorado's Organized Crime Act, Colo. Rev. Stat. §§ 18-170-101, *et seq.*, (Count Four); violation of Florida's Civil Remedies for Criminal Practices Act, Fla. Stat. Ann. §§ 772.101, *et seq.*, (Count Five); violation of Georgia's Racketeer Influenced and Corrupt Organizations Act, Ga. Stat. Ann. §§ 16-14-1, *et seq.*, (Count Six); violation of North Carolina's Racketeer Influenced and Corrupt Organization Act, N.C. Gen. Stat. §§ 75D-1, *et seq.*, (Count Seven); violation of Utah's Pattern of Unlawful Activity Act, Utah Code Ann. §§ 76-10-1601, *et seq.*, (Count Eight); violation of Wisconsin's Organized Crime Control Act, Wis. Stat. §§ 946.80, *et seq.*, (Count Nine); and civil conspiracy under the common law of thirty-six different

states (Count Ten).[3] (ECF No. 411.) On June 11, 2021, Defendants filed a Partial Motion to Dismiss the Third Amended Complaint. (ECF No. 422.) On July 30, 2021, Plaintiffs opposed (ECF No. 455), and on September 13, 2021, Defendants replied (ECF No. 468).

## II. LEGAL STANDARDS

### A. Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* at 548 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286 (1986). Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

---

[3] Under Count Ten of the Third Amended Complaint, Plaintiffs assert "[t]his claim is brought by all plaintiffs against Defendants Novo Nordisk, Sanofi, and Eli Lilly, and alleges violations of the civil conspiracy laws of the following states: Alabama, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Illinois, Indiana, Iowa, Kansas, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Nevada, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Virginia, and Wisconsin." (ECF No. 411 ¶ 525.)

U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a

court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (emphasis added) (quoting *Shaw*, 82 F.3d at 1220).

## III.   DECISION

Defendants' Partial Motion to Dismiss seeks to dismiss Counts Three, Four, Six, Eight and Nine (the "State RICO Claims")[4] and Count Ten (the "State Civil Conspiracy Claims") of the Third Amended Complaint (ECF No. 422 at 6–17.) Defendants also seek to dismiss state-law claims against certain Defendants where no Plaintiff from a given state purchased a product of that Defendant. (*Id.* at 17–21.) The Court addresses each in turn.

### A.      The State RICO Claims

Defendants assert Plaintiffs lack standing to pursue the State RICO Claims. (ECF No. 422 at 6.) Specifically, Defendants argue because the indirect purchaser rule bars Plaintiffs from pursuing their federal RICO claims, and because the state racketeering statutes Plaintiffs invoke are modeled after the federal RICO statute, the State RICO Claims should be dismissed for the same reasons the federal RICO claims were dismissed.[5] (*Id.* at 6–8.) Plaintiffs assert the State

---

[4] Defendants sought to dismiss Counts Five (Florida) and Seven (North Carolina), but Plaintiffs have voluntarily withdrawn both Counts. (ECF No. 455 at 6.) Accordingly, the Court need not address them.

[5] With exception to the voluntarily withdrawn Counts, Defendants do not object to the adequacy of pleadings of the State RICO Claims. Rather, Defendants contend Plaintiffs cannot "sidestep the indirect purchaser rule's bar on federal RICO claims simply by asserting claims under state analogues of RICO." (ECF No. 422 at 8.) Therefore, the Court addresses only the applicability of the indirect purchaser rule to the State RICO Claims.

RICO Claims are not subject to the indirect purchaser rule. (ECF No. 455 at 4.) Specifically, Plaintiffs argue the "indirect purchaser rule—as interpreted by the Third Circuit in federal RICO actions—does not bar racketeering claims under state statutes that have no such rule." (*Id.* at 6.)

The Supreme Court developed the indirect purchaser rule in the antitrust context when it held that Clayton Act plaintiffs may not demonstrate injury by providing evidence only of indirect purchases. *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 737 (1977). The Supreme Court warned allowing indirect purchasers to recover under such a theory would "transform treble-damages actions into massive multiparty litigations involving many levels of distribution and including large classes of ultimate consumers remote from the defendant." *Id*. at 740. The Court further explained the indirect purchaser rule is intended to prevent defendants from exposure to "multiple liability" should both indirect and direct purchasers in a distribution chain be permitted to assert claims arising out of a single overcharge. *Id.* at 730; *see McCarthy v. Recordex Serv., Inc.*, 80 F.3d 842, 851 (3d Cir. 1996). Because 18 U.S.C. § 1964(c), RICO's private cause of action, was modeled on the Clayton Act, "antitrust standing principles apply equally to allegations of RICO violations." *McCarthy*, 80 F.3d at 855; *see also Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 270–74 (1992).

In *Holmes*, the Supreme Court held federal jurisprudence interpreting antitrust principles govern RICO claims because Congress modeled RICO's civil action provision on a substantially similar provision in the Clayton Act, explaining:

> The key to better interpretation lies in some statutory history. We have repeatedly observed, see *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 150–51 (1987) . . . that Congress modeled § 1964(c) . . . [of RICO after] the federal antitrust laws, § 4 of the Clayton Act . . .
>
> In *Associated General Contractors* [*v. Carpenters*, 469 U.S. 519, 529 (1983)] . . . we discussed how Congress enacted § 4 in 1914

> with language borrowed from § 7 of the Sherman Act, passed 24 years earlier. Before 1914, lower federal courts had read § 7 to incorporate common-law principles of proximate causation . . . and as we reasoned, as many lower federal courts had done before us . . . that congressional use of the § 7 language in § 4 presumably carried the intention to adopt 'the judicial gloss that avoided a simple literal interpretation.' . . . Thus, we held that a plaintiff's right to sue under § 4 required a showing that the defendant's violation not only was a 'but for' cause of his injury, but was the proximate cause as well.

> The reasoning applies just as readily to § 1964(c) [of RICO]. We may fairly credit the 91st Congress, which enacted RICO, with knowing the interpretation federal courts had given the words earlier Congresses had used first in § 7 of the Sherman Act, and later in the Clayton Act's § 4. . . . It used the same words, and we can only assume it intended them to have the same meaning that courts had already given them.

503 U.S. at 267–68.

However, the Supreme Court did not foreclose States from permitting indirect purchaser actions under their own state antitrust laws. *See California v. ARC Am. Corp.*, 490 U.S. 93, 103 (1989) ("[N]othing in *Illinois Brick* suggests that it would be contrary to congressional purposes for States to allow indirect purchasers to recover under their own antitrust laws."); *Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.*, 902 F.3d 735, 743 (7th Cir. 2018) ("While most states model their antitrust statutes and jurisprudence on federal law, they are under no obligation to do so."); *GEICO Corp. v. Autoliv, Inc.*, 345 F. Supp. 3d 799, 823 (E.D. Mich. 2018) (finding several states implemented "*Illinois Brick* repealer statutes" that "allow recovery by indirect purchasers under state law"); *In re EpiPen Mktg., Sales Pracs. & Antitrust Litig.*, 336 F. Supp. 3d 1256, 1311 (D. Kan. 2018) (explaining in *Illinois Brick*, "the Supreme Court held that only direct purchasers may bring claims for damages under the federal antitrust laws"); *Bunker's Glass Co. v. Pilkington, PLC*, 75 P.3d 99, 102 (Ariz. 2003) (finding both direct and indirect purchasers may sue under Arizona's antitrust statute); *In re Auto. Parts Antitrust Litig.*, Civ. A. No. 12-2311, 2015 U.S. Dist.

LEXIS 189606, at *686 (E.D. Mich. May 1, 2015) (stating "the Supreme Court held that federal law does not preempt state indirect purchaser statutes").

The role of district courts is to "apply the law of the appropriate jurisdiction." *Panico v. Portfolio Recovery Assocs. LLC,* 879 F.3d 56, 58 (3d Cir. 2018) (citing *City of Philadelphia v. Lead Indus. Ass'n,* 994 F.2d 112, 123 (3d Cir. 1993). "When interpreting a statute, 'the literal meaning of the statute is the most important, and [courts] are always to read the statute in its ordinary and natural sense.'" *In re Harvard Indus., Inc.*, 568 F.3d 444, 451 (3d Cir. 2009) (quoting *Galloway v. United States*, 492 F.3d 219, 223 (3d Cir. 2007)). As a basic premise, "federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 427 (1996). "When the state's highest court has not addressed the precise question presented, a federal court must predict how the state's highest court would resolve the issue[.]" *City of Phila.*, 994 F.2d at 122-23 (citing *Borman v. Raymark Indus., Inc.*, 960 F.2d 327, 331 (3d Cir. 1992)). "There are many rules of decision commonly accepted and acted upon by the bar and inferior courts which are nevertheless laws of the state although the highest court of the state has never passed upon them." *West v. AT&T Co.*, 311 U.S. 223, 236 (1940). "In those circumstances a federal court is not free to reject the state rule merely because it has not received the sanction of the highest state court." *Id.* "State law is to be applied in the federal as well as the state courts and it is the duty of the former in every case to ascertain from all the available data what the state law is and apply it[.]" *Id.* at 237.

"In predicting how a matter would be decided under state law," a federal court should examine: "(1) what the [state's] Supreme Court has said in related areas; (2) the decisional law of the [state's] intermediate courts; (3) federal appeals and district court cases interpreting state law; and (4) decisions from other jurisdictions that have discussed the issues we face here." *Hughes v.*

*Long*, 242 F.3d 121, 128 (3d Cir. 2001) (citing *Boyanowski v. Cap. Area Intermediate Unit*, 215 F.3d 396, 406 (3d Cir. 2000)). "[W]here 'two competing yet sensible interpretations' of state law exist," a federal court "should opt for the interpretation that restricts liability, rather than expands it, until the Supreme Court of [the State] decides differently." *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 253 (3d Cir. 2010) (citing *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 680 (3d Cir. 2010)).

Therefore, even if a state's highest court has not decided whether the indirect purchaser rule applies to the State RICO Claims, the Court will predict what the state's highest court may decide by looking into other relevant legal authorities. The five state racketeering statutes at issue are Arizona's Civil Racketeering Statute, Ariz. Rev. Stat. §§ 13-2314.04, *et seq.*, Colorado's Organized Crime Act, Colo. Rev. Stat. §§ 18-170-101, *et seq.*, Georgia's Racketeer Influenced and Corrupt Organizations Act, Ga. Stat. Ann. §§ 16-14-1, *et seq.*, Utah's Pattern of Unlawful Activity Act, Utah Code Ann. §§ 76-10-1601, *et seq.*, and Wisconsin's Organized Crime Control Act, Wis. Stat. §§ 946.80, *et seq.*

### 1.     State Racketeering Statutes

Defendants argue Plaintiffs, as indirect purchasers, lack standing to pursue the state racketeering claims. (ECF No. 422 at 6.) Defendants contend because the state racketeering statutes Plaintiffs invoke are modeled after the federal RICO statute, the indirect purchaser rule barring Plaintiffs' federal RICO claims also bars the state racketeering claims. (*Id*.) Plaintiffs argue the indirect purchaser rule is a judicially-created federal rule that applies to federal RICO claims but not the state racketeering claims. (ECF No. 455 at 7.) Plaintiffs assert Defendants incorrectly "assume that the Third Circuit's interpretation of the indirect purchaser rule to federal RICO claims should apply to these *state* racketeering claims." (*Id*. at 6.) Plaintiffs contend the Court "must

interpret state law according to each state's authority or otherwise predict how that state's courts would interpret" the statute. (*Id.* at 6–7.)

As an initial matter, the Court is not aware of, nor have the parties identified, federal or state authority opining on the applicability of the indirect purchaser rule to the state racketeering statutes at issue. The Court begins with examining the relevant statutory language. *In re Harvard Indus., Inc.*, 568 F.3d at 451. RICO's civil action provision provides:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter [18 U.S.C. § 1962] may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . .

18 U.S.C. § 1964. The civil action provision under Colorado's racketeering statute provides:

> Any person injured by reason of any violation of the provisions of section 18-17-104 shall have a cause of action for threefold the actual damages sustained. Such person shall also recover attorney fees in the trial and appellate courts and costs of investigation and litigation reasonably incurred . . . .

Colo. Rev. Stat. § 18-17-106. The civil action provision under Georgia's racketeering statute provides:

> Any person who is injured by reason of any violation of Code Section 16-14-4 shall have a cause of action for three times the actual damages sustained and, where appropriate, punitive damages. Such person shall also recover attorney's fees in the trial and appellate courts and costs of investigation and litigation reasonably incurred. . . .

Ga. Code Ann. § 16-14-6. The civil action provision under Utah's racketeering statute provides:

> A person injured in his person, business, or property by a person engaged in conduct forbidden by any provision of Section 76-10-1603 may sue in an appropriate district court and recover twice the damages he sustains . . . .

12

Utah Code Ann. § 76-10-1605. The civil action provision under Wisconsin's racketeering statute provides:

> Any person who is injured by reason of any violation of s. 946.83 or 946.85 has a cause of action for 2 times the actual damages sustained and, when appropriate, punitive damages. The person shall also recover attorney fees and costs of the investigation and litigation reasonably incurred. . . .

Wis. Stat. Ann. § 946.87.

The language in the civil action provisions of these state racketeering statutes is substantially similar to the language in the civil action provision of the federal RICO statute. Indeed, it is well-established the state racketeering statutes of Colorado, Georgia, Utah, and Wisconsin are modeled after the federal RICO statute. *See Floyd v. Coors Brewing Co*., 952 P.2d 797, 803 (Colo. App. 1997) (finding Colorado's Organized Crime Control Act "is patterned after the federal [RICO] Act"), *rev'd on other grounds*, 978 P.2d 663 (Colo. 1999); *Gianzero v. Wal-Mart Stores Inc.*, Civ. A. No. 09-656, 2010 U.S. Dist. LEXIS 38370, at *9 (D. Colo. Mar. 29, 2010) ("The Colorado Organized Crime Control Act (COCCA) is modeled after RICO."); *Morast v. Lance*, 807 F.2d 926, 933 (11th Cir. 1987) ("Georgia's RICO statutes are essentially identical to the federal RICO statutes."); *Williams Gen. Corp. v. Stone*, 614 S.E.2d 758, 760 (Ga. 2005) (finding federal RICO is "a statute which mirrors the Georgia civil RICO statute in both purpose and language"); *State v. Squires*, 446 P.3d 581, 593 (Utah Ct. App. 2019) (finding the Utah Pattern of Unlawful Activity Act (UPUAA) "is modeled after the federal [RICO] Act"); *State v. Evers*, 472 N.W.2d 828, 831 (Wis. Ct. App. 1991) (finding the Wisconsin Organized Crime Control Act "was patterned after RICO").

Because the state racketeering statutes of Colorado, Georgia, Utah, and Wisconsin are modeled after federal RICO, courts have looked to federal case law construing federal RICO for

13

guidance in interpreting these state racketeering statutes. *See People v. Pollard*, 3 P.3d 473, 476 (Colo. App. 2000) ("Because COCCA is patterned after [RICO], federal decisions construing RICO may be instructive upon similar issues arising under the state statute.") (internal citations omitted); *People v. Hoover*, 165 P.3d 784, 798 (Colo. App. 2006) (finding the Colorado RICO statute was modeled after the federal RICO statute and is generally interpreted according to the same principles); *Albright v. Att'ys Title Ins. Fund*, 504 F. Supp. 2d 1187, 1203 n.15 (D. Utah 2007) ("Because provisions of the Utah [Pattern of Unlawful Activity Act (UPUAA)] are nearly identical to those in the federal [RICO statute], federal district courts look to . . . federal case law for guidance."); *Zibalstar, L.C. v. Conte*, Civ. A. No. 17-563, 2019 U.S. Dist. LEXIS 10943, at *8 (D. Utah Jan. 22, 2019) ("Utah courts applying the UPUAA rely heavily on federal RICO decisional law."); *Williams Gen. Corp.*, 614 S.E.2d at 760 ("Because the Georgia RICO Act was modeled after the federal statute, this Court has found federal authority persuasive in interpreting the Georgia RICO statute."); *State v. Judd*, 433 N.W.2d 260, 262 (Wis. Ct. App. 1988) (finding federal case law interpreting RICO is persuasive authority in interpreting the Wisconsin RICO statute). Therefore, the Court looks to federal decisions construing federal RICO's civil action provision for guidance in interpreting the civil action provisions of the state racketeering statutes at issue.

While the federal RICO statute does not explicitly state indirect purchasers lack standing, federal courts have construed the language of RICO's civil action provision to bar indirect purchaser actions. *McCarthy*, 80 F.3d at 855. Because the language in the civil action provisions of the state racketeering statutes is substantially identical to the language in federal RICO's civil action provision, federal jurisprudence construing federal RICO's civil action provision apply to the civil action provisions of the state racketeering statutes. *See Holmes*, 503 U.S. at 268 (holding

14

antitrust principles apply to RICO claims because when Congress "used the same words, and we can only assume it intended them to have the same meaning that courts had already given them"); *Brickyard Homeowners' Ass'n Mgmt. Comm. v. Gibbons Realty Co.*, 668 P.2d 535, 540 (Utah 1983) ("Identity in language presumes identity of construction, so that we look to federal . . . law for guidance."). A majority of courts have repeatedly construed this civil action provision language to bar indirect purchaser actions. *See In re Zantac (Ranitidine) Prods. Liab. Litig.*, Civ. A. No. 20-2924, 2021 U.S. Dist. LEXIS 122580, at *32 (S.D. Fla. June 30, 2021) (observing "the majority of federal courts to address the issue have applied the [indirect purchaser] rule to RICO claims"); *see also McCarthy*, 80 F.3d at 855; *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 616 (6th Cir. 2004) ("[I]ndirect purchasers lack standing under RICO and the antitrust laws to sue for overcharges passed on to them by middlemen."); *Carter v. Berger*, 777 F.2d 1173, 1177 (7th Cir. 1985); *Harris Cty., Tex. v. Eli Lilly & Co.*, Civ. A. No. 19-4994, 2020 U.S. Dist. LEXIS 179199, at *12 (S.D. Tex. Sept. 29, 2020) (declining "to follow the minority rule" and holding "that indirect purchasers lack standing under RICO"). Absent guidance from a state's highest court, this Court finds no reason to interpret this substantially similar language any differently from how courts have already construed such language.

Further, to the extent Plaintiffs argue that precedent from Tenth Circuit—which rejected the indirect purchaser rule in the federal RICO context—should govern their Colorado and Utah state racketeering claims because Colorado and Utah are in the Tenth Circuit, Plaintiffs misconstrue the guiding principles instructing the Court's analysis.[6] In predicting how a state's

---

[6] To the extent Defendants contend this Court is bound by the Third Circuit's ruling in *McCarthy*, the holding was limited to federal RICO claims. *Day & Zimmermann, Inc. v. Challoner*, 423 U.S. 3, 4 (1975) ("A federal court in a diversity case is not free to engraft onto those state rules exceptions or modifications which may commend themselves to the federal court, but which have

highest court would rule on an undecided matter of state law, the Court may look at "decisions from other jurisdictions that have discussed the issues[.]" *Hughes*, 242 F.3d at 128. While the Tenth Circuit declined to apply the indirect purchaser rule, other circuits, including the Third Circuit, have elected to apply it. *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 2021 U.S. Dist. LEXIS 122580, at *36 ("Because the Supreme Court's message in *Holmes* was clear, the Court is persuaded to join the prevailing view that the indirect purchaser rule applies to RICO claims."); *McCarthy*, 80 F.3d at 855; *Trollinger*; 370 F.3d at 616; *Carter*, 777 F.2d at 1177. Because the Court utilizes federal RICO case law to guide its interpretation of state racketeering statutes, the Third Circuit's binding and Tenth Circuit's non-binding application of the indirect purchaser rule in the federal RICO context is persuasive for determining the application of the indirect purchaser rule in the state RICO context. "[W]here 'two competing yet sensible interpretations' of state law exist," a federal court "should opt for the interpretation that restricts liability, rather than expands it, until the Supreme Court of [the State] decides differently." *Travelers Indem. Co.*, 594 F.3d at 253 (citing *Werwinski*, 286 F.3d at 680); *see also Pearson v. John Hancock Mut. Life Ins. Co.*, 979 F.2d 254, 259 (1st Cir. 1992) (noting a plaintiff "cannot justifiably complain if [a] federal court manifests great caution in blazing new state-law trails") (citations omitted). As discussed in Section III.A., the intent of the indirect purchaser rule was to limit the exposure to "multiple liability." *McCarthy*, 80 F.3d at 851 (quoting *Illinois Brick*, 431 U.S. at 730). Therefore, following the guiding principles set forth above, the Court is led to predict the highest courts for the states of Colorado and Utah would hold the indirect purchaser rule applies to their respective state racketeering statutes.

---

not commended themselves to the State in which the federal court sits."). Notwithstanding, because the Court utilizes federal RICO case law to guide its interpretation of state RICO statutes, the Third Circuit's reasoning is persuasive for adjudicating the state racketeering claims.

Accordingly, Plaintiffs as indirect purchasers lack standing to bring state racketeering claims under the state racketeering statutes of Colorado, Georgia, Utah, and Wisconsin.[7]

### 2.    Arizona's Civil Racketeering Statute

Plaintiffs contend because the Arizona Supreme Court rejected applying the indirect purchaser rule to its state antitrust statute, the indirect purchaser rule should not apply to Arizona's racketeering statute. (ECF No. 455 at 8.) Defendants argue the Arizona Supreme Court's "decision to repeal the indirect purchaser rule as to its *antitrust* statute has no bearing on whether the rule still applies to the state's *RICO* statute." (ECF No. 468 at 3.) The Court is not aware, nor have the parties identified, any federal or state authority addressing the applicability of the indirect purchaser rule to Arizona's racketeering statute.

The civil action provision under Arizona's civil racketeering statute provides:

> A person who sustains reasonably foreseeable injury to his person, business or property by a pattern of racketeering activity, or by a violation of section 13-2312 involving a pattern of racketeering activity, may file an action in superior court for the recovery of up to treble damages and the costs of the suit, including reasonable attorney fees for trial and appellate representation.

---

[7] Plaintiffs contend "Georgia courts have not required that plaintiffs be direct purchasers; instead, courts have engaged in a proximate causation analysis." (ECF No. 455 at 12.) However, Plaintiffs are conflating the indirect purchaser rule with the proximate cause requirement, which, "while related, are 'two analytically distinct aspects' of standing." *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 2021 U.S. Dist. LEXIS 122580, at *36 (quoting *McCarthy*, 80 F.3d at 851). Indeed, Plaintiffs have not identified any Georgia case law addressing the applicability of the indirect purchaser rule, and the cases they rely on do not involve indirect purchaser standing. *See e.g. Quasebarth v. Green Tree Servicing, LLC*, 90 F. Supp. 3d 1373, 1382–83 (M.D. Ga. 2015) (considering standing for mortgagee plaintiffs who directly contacted the mortgage loan servicer defendant); *Wylie v. Denton*, 746 S.E.2d 689, 694–95 (Ga. Ct. App. 2013) (holding a former bank employee lacked standing against former employer because the loss of employment was only indirectly caused by the bank's alleged wrongdoing); *InterAgency, Inc. v. Danco Fin. Corp.*, 417 S.E.2d 46 (Ga. Ct. App. 1992) (holding the corporation stated a cause of action under RICO against brokers—without any discussion of standing—where the corporation cancelled its letter of intent to purchase a travel agency from the brokers and the brokers retained the funds).

Ariz. Rev. Stat. § 13-2314.04. "Arizona's racketeering statute was adapted from the [RICO], 18 U.S.C. §§ 1961–1968, and Arizona courts 'look to federal decisional law for guidance in construing and applying the Arizona statute.'" *Lara-Chacon v. Ashcroft*, 345 F.3d 1148, 1156 (9th Cir. 2003) (citing *Baines v. Superior Court*, 688 P.2d 1037, 1040 (Ariz. Ct. App. 1984)); *Rosier v. First Fin. Capital Corp.*, 889 P.2d 11, 13–14 (Ariz. Ct. App. 1994) ("Arizona's RICO act is patterned after the federal RICO act."); *Hannosh v. Segal*, 328 P.3d 1049, 1053 (Ariz. Ct. App. 2014) ("We look to federal interpretation for guidance where the federal and state RICO statutes contain similar provisions.").

In *Bunker's Glass Co. v. Pilkington PLC*, the Arizona Supreme Court explicitly declined to follow *Illinois Brick*'s guidance and held indirect purchasers have standing to sue under Arizona's state antitrust statute. 75 P.3d 99, 108 (Ariz. 2003). In *Bunker's Glass*, the Arizona Supreme Court reasoned:

> This case turns upon the interpretation of a provision of the Arizona Antitrust Act that permits a "person" to sue to redress an antitrust injury. A.R.S. § 44-1408(B). Generally, the best indicator of the meaning of a statute is its plain language. *Powers v. Carpenter*, 51 P.3d 338, 340 (Ariz. 2002). The [Arizona Antitrust] Act defines "person" as including "an individual, corporation, . . . or any other legal entity." A.R.S. § 44-1401. Nothing in this language restricts the right of action to direct purchasers injured by violations of the Arizona Antitrust Act or precludes indirect purchasers from suing. Indeed . . . by defining the term "person" to include an "individual," the legislature signaled its intent to allow indirect purchasers to sue, because individuals are rarely direct purchasers. . . .

*Id.* at 102. The Arizona Supreme Court continued by addressing the role of federal guidance for interpreting its state antitrust statute, explaining:

> In the absence of the federal guidance clause, Arizona's statutory language would plainly include indirect purchasers. . . . By refusing to construe the federal guidance clause as requiring that Arizona courts follow *Illinois Brick*'s limitation on the scope of the right of action granted by the legislature, the court is simply choosing to

> follow the expressed legislative intent that persons injured in their business or property by anti-competitive activity have a right of action. The court defers to the legislature, not the federal courts, to create exceptions to the rule.

*Id.* at 107.

Here, the Court finds the Arizona Supreme Court's rejection of the indirect purchaser rule and its rationale for declining to follow federal guidance when interpreting its state antitrust statute to be instructive for predicting how Arizona's highest court would decide the applicability of the indirect purchaser rule to its state racketeering statute. While true that the court's repeal of the indirect purchaser rule in *Bunker's Glass* was limited to the state antitrust context, Defendants' argument *Bunker's Glass* has no bearing on whether the indirect purchaser rule applies in the state racketeering context strains credulity. Afterall, the indirect purchaser rule was derived from the antitrust context before it was extended to apply to RICO claims. *McCarthy*, 80 F.3d at 855 (finding because RICO's civil action provision was modeled on the Clayton Act, "antitrust standing principles apply equally to allegations of RICO violations").

The indirect purchaser rule was derived from § 4 of the Clayton Act, a provision of the federal antitrust statute.[8] The civil action provision in Arizona's antitrust statute was modeled on § 4 of the Clayton Act.[9] *Bunker's Glass Co.*, 75 P.3d at 102 (finding § 4 of the Clayton Act "is

---

[8] Section 4 of the Clayton Act, 15 U.S.C. § 15(a), provides:

> any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

[9] The civil action provision in Arizona antitrust statute provides:

phrased almost identically" to the civil action provision in Arizona's antitrust statute). The federal RICO civil action provision was also modeled on § 4 of the Clayton Act; and Arizona's state RICO civil action provision was modeled on the federal RICO civil action provision. In other words, the federal and state counterparts of the antitrust and RICO statutes are all modeled on the same civil action provision. Arizona's Supreme Court has already construed its state counterpart of this provision to permit indirect purchaser actions. Therefore, the logical extension would be for Arizona's Supreme Court to extrapolate its interpretation of its state antitrust statute, which is modeled on § 4 of the Clayton Act, to its state RICO statute, which, through the federal RICO statute, is also modeled after § 4 of the Clayton Act. Accordingly, the Court is led to predict the highest court in the state of Arizona would permit indirect purchaser actions to proceed under Arizona's Civil Racketeering Statute.

### 3.   *Illinois Brick* Repealer Statutes

Plaintiffs argue the indirect purchaser rule should not apply to the Utah and Wisconsin racketeering claims because the Utah and Wisconsin state legislatures enacted laws to reverse the holding of *Illinois Brick* in their state antitrust statutes. (ECF No. 455 at 9.) Specifically, Plaintiffs contend "[t]here's no better evidence that a state would not apply *Illinois Brick* to racketeering claims than that state's refusal to apply *Illinois Brick* to antitrust claims." (*Id.*) Defendants counter

---

A person threatened with injury or injured in his business or property by a violation of this article may bring an action for appropriate injunctive or other equitable relief, damages sustained and, as determined by the court, taxable costs and reasonable attorney's fees. If the trier of fact finds that the violation is flagrant, it shall increase recovery to an amount not in excess of three times the damages sustained.

Ariz. Rev. Stat. § 44-1408(B).

"a state's decision to repeal the indirect purchaser rule as to its *antitrust* statute has no bearing on whether the rule still applies to the state's *RICO* statute." (ECF No. 468 at 3.) Defendants argue "the plain language of the repealer statutes make clear that they only apply to the states' *antitrust* statutes." (*Id*.)

"In the absence of any clear precedent of the state's highest court, we must predict how that court would resolve the issue." *Yurecka v. Zappala*, 472 F.3d 59, 62 (3d Cir. 2006) (citing *Polselli v. Nationwide Mut. Fire Ins. Co.*, 126 F.3d 524, 528 n.3 (3d Cir. 1997)); *see also Hunt v. United States Tobacco Co.*, 538 F.3d 217, 220 (3d Cir. 2008). "In making such a prediction, we should consider 'relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would resolve the issue at hand.'" *Id.* (quoting *Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000) (quoting *McKenna v. Ortho Pharm. Corp.*, 622 F.2d 657, 663 (3d Cir. 1980))). "[A]n intermediate appellate state court is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Edwards v. HOVENSA, LLC*, 497 F.3d 355, 361 (3d Cir. 2007) (quotation marks and ellipsis omitted) (quoting *West.*, 311 U.S. at 237); *see also Travelers Indem. Co.*, 594 F.3d at 244.

Several states have enacted "*Illinois Brick* repealer statutes," which are state laws overriding the Supreme Court's holding in *Illinois Brick* to permit indirect purchasers to pursue antitrust claims under their state's antitrust statute. *GEICO Corp.*, 345 F. Supp. 3d at 842 (observing a number of states have enacted so-called "*Illinois Brick* repealer statutes"); *In re Auto. Parts Antitrust Litig.*, 2015 U.S. Dist. LEXIS 189606, at *686 ("In response to the Supreme Court's prohibition against antitrust actions by indirect purchasers articulated in [*Illinois Brick*],

many states enacted repealer provisions, allowing state actions for indirect purchasers."); *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, 336 F. Supp. 3d at 1311 ("To avoid the *Illinois Brick* rule, some states have passed 'repealer' statutes allowing indirect purchasers to recover under state antitrust laws.") (citing *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 818 (N.D. Ill. 2017)).

Here, Utah and Wisconsin enacted legislation allowing indirect purchasers to pursue antitrust claims by repealing *Illinois Brick*'s holding from applying to their state antitrust statutes.[10] *See In re Aggrenox Antitrust Litig.,* 94 F. Supp. 3d 224, 251-52 (D. Conn. 2015) ("Utah has passed an *Illinois Brick* repealer [statute], and its antitrust statute therefore does grant indirect purchasers the right to bring antitrust damages claims."); *Meyers v. Bayer AG*, 735 N.W.2d 448, 462 (Wis. 2007) ("[W]e noted that the 1980 revision of [the antitrust statute] provided a remedy under the statute to indirect purchasers in response to *Illinois Brick*, . . . which foreclosed recovery to indirect purchasers under the federal statute."). However, Utah and Wisconsin have not enacted legislation allowing indirect purchasers to pursue racketeering claims under their respective state racketeering

---

[10] The Wisconsin *Illinois Brick* repealer provision provides:

> Except as provided under par. (b), any person injured, directly or indirectly, by reason of anything prohibited by this chapter may sue therefor and shall recover threefold the damages sustained by the person and the cost of the suit, including reasonable attorney fees.

Wis. Stat. Ann. § 133.18 (1)(a). The Utah *Illinois Brick* repealer statute provision provides:

> A person who is a citizen of this state or a resident of this state and who is injured or is threatened with injury in his business or property by a violation of the Utah Antitrust Act may bring an action for injunctive relief and damages, regardless of whether the person dealt directly or indirectly with the defendant.

Utah Code Ann. § 76-10-3109(1)(a).

22

statutes. As the Supreme Court explained, states can decide to permit indirect purchaser actions even though federal law does not. *ARC Am. Corp.*, 490 U.S. at 103. While Utah and Wisconsin enacted legislation that permits such actions to proceed under the antitrust context, they have not done the same to permit such actions to proceed under their state racketeering statutes.[11] It is not the task of this Court to predict what legislation States will pass; rather, the Court is tasked with predicting how the state's highest court would resolve the matter. *See Travelers Indem. Co.*, 594 F.3d at 244.

In predicting how the highest courts in the states of Utah and Wisconsin would interpret their state racketeering statutes, the guidance instructing this Court is to consider federal case law construing the federal RICO statute. *See Roberts v. C.R. England, Inc.*, 318 F.R.D. 457, 525 (D. Utah 2017) ("While state courts are not required to adopt identical interpretations of UPUAA and RICO, the Utah Supreme Court often considers federal case law on RICO claims when analyzing comparable UPUAA provisions."); *Hill v. Estate of Allred*, 216 P.3d 929, 938–39 (Utah 2009);

---

[11] By way of comparison, the Court has identified states that have enacted *Illinois Brick* repealer statutes to their state RICO statutes. Under Ohio's racketeering statute, its civil action provision provides:

> In a civil proceeding under division (A) of this section, ***any person directly or indirectly injured*** by conduct in violation of section 2923.32 of the Revised Code or a conspiracy to violate that section, other than a violator of that section or a conspirator to violate that section, in addition to relief under division (B) of this section, shall have a cause of action for triple the actual damages the person sustained.

Ohio Rev. Code Ann. § 2923.34 (emphasis added); *see also Lowe v. Ransier (In re Nicole Gas Prod.)*, 581 B.R. 843, 849 (B.A.P. 6th Cir. 2018) ("[T]he Ohio Legislature intended the OCPA to offer standing to a broader class of plaintiffs than federal RICO statutes."); *CSAHA/UHHS-Canton, Inc. v. Aultman Health Found.*, 2012-Ohio-897, ¶ 74 (Ohio Ct. App. 5th Dist. 2012) ("[U]nlike RICO, the Ohio [racketeering statute] specifically permits recovery for all damages directly or indirectly caused by [the defendant]."); *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris, Inc.*, 23 F. Supp. 2d 771, 787 (N.D. Ohio 1998).

*State v. Bradshaw*, 99 P.3d 359, 367 (Utah Ct. App. 2004), *rev'd on other grounds*, 152 P.3d 288 (Utah 2006); *Bradford v. Moench*, 670 F. Supp. 920, 928 (D. Utah 1987); *Squires*, 446 P.3d at 593; *Albright*, 504 F. Supp. 2d at 1203 n.15; *Zibalstar*, 2019 U.S. Dist. LEXIS 10943, at *8; *Heritage Christian Sch., Inc. v. ING N. Am. Ins. Corp.*, 851 F. Supp. 2d 1154, 1157 (E.D. Wis. 2012) ("Because WOCCA was patterned after RICO, Wisconsin courts consider cases interpreting RICO to be persuasive authority as to the interpretation of WOCCA."); *State v. Mueller*, 549 N.W.2d 455 (Wis. Ct. App. 1996); *Judd*, 433 N.W.2d at 262; *Evers*, 472 N.W.2d at 831; *Rinaldi v. Wisconsin*, Civ. A. No. 19-3, 2019 U.S. Dist. LEXIS 137372, at *10 (W.D. Wis. Aug. 13, 2019). Therefore, the Court follows the analysis it set forth above, Section III.A.1.

To clarify, there is a distinction between why the Arizona Supreme Court's holding repealing *Illinois Brick* can be extrapolated to apply to Arizona's racketeering statute and why the Utah and Wisconsin *Illinois Brick* repealer statutes cannot be extrapolated to apply to the Utah and Wisconsin racketeering statutes. It is not the job of courts to predict what state legislatures will do. Courts are tasked with predicting how the state's highest court would resolve an undecided issue. *See City of Phila.*, 994 F.2d at 122–23. As discussed in Section III.A.2., the Arizona Supreme Court in *Bunker's Glass* was instructive in explaining how it resolved the applicability of the indirect purchaser rule when its state counterpart was modeled after the federal statute. Using this guidance, the Court can predict how the Arizona Supreme Court would resolve the issue of indirect purchaser actions in the state RICO context. There is no such guidance in Utah and Wisconsin. To the extent there is such guidance, courts are instructed to look to interpretations of the federal RICO statute in construing the Utah and Wisconsin racketeering statutes.

By way of example, in May 2006, Utah amended its state antitrust statute to incorporate and enact an *Illinois Brick* repealer provision to its state statute. *GEICO* Corp., 345 F. Supp. 3d at

842 (citing Utah Code Ann. 76-10-3109(1)(a)). Prior to the 2006 amendment, courts construing Utah's state antitrust law applied *Illinois Brick*'s holding barring indirect purchaser actions. *In re Auto. Parts Antitrust Litig.*, Civ. A. No. 12-02311, 2013 U.S. Dist. LEXIS 80338, at *73–74 (E.D. Mich. June 6, 2013) (finding in Utah, "*Illinois Brick* was applied prior to the 2006 amendment") (citing *Boisjoly v. Morton Thiokol, Inc.*, 706 F. Supp. 795, 805 (D. Utah 1988)); *see also GEICO Corp.*, 345 F. Supp. 3d at 855 (dismissing antitrust claims by indirect purchasers under the laws of Utah "arising from conduct that predated the states' enactment of *Illinois Brick* repealer provisions"); *In re Static Random Access Memory Antitrust Litig.*, Civ. A. No. 07-01819, 2010 U.S. Dist. LEXIS 131002, at *43–44 (N.D. Cal. Dec. 8, 2010) (same). Indeed, before the *Illinois Brick* repealer statute was enacted, courts applied and interpreted the Utah state antitrust statute to be consistent with its federal counterpart. *See Boisjoly*, 706 F. Supp. at 805 (finding the Utah antitrust statute, "which is modeled after and closely resembles the federal antitrust statute, expressly provides that it is to be applied and interpreted consistently with its federal counterpart"). It was not until after the *Illinois Brick* repealer statute was enacted that courts applying Utah's antitrust law began permitting indirect purchaser actions. *California v. Infineon Techs. AG*, Civ. A. No. 06-4333, 2008 U.S. Dist. LEXIS 120058, at *25 (N.D. Cal. Apr. 15, 2018) (stating in Utah "the 2006 amendment affirmatively altered the legal landscape with respect to indirect purchaser standing").

Therefore, absent legislative intervention, the Court is led to predict the state's highest court would continue to interpret its respective state racketeering statute consistent with its federal counterpart. Accordingly, Defendants' Partial Motion to Dismiss is **GRANTED** as to the State RICO Claims under the laws of Colorado, Georgia, Utah, and Wisconsin (Counts Four, Six, Eight, and Nine), and **DENIED** as to the State RICO Claim under the laws of Arizona (Count Three).

### B.      The State Civil Conspiracy Claims

Plaintiffs assert civil conspiracy claims under the laws of thirty-six states.[12] (ECF No. 411

¶¶ 524–38.) Defendants argue the state-law civil conspiracy claims should be dismissed: (1) where

the federal and state racketeering claims fail as viable underlying claims; and (2) where any

surviving underlying claim renders the civil conspiracy claim duplicative. (ECF No. 422 at 10.)

Defendants also assert the civil conspiracy claims brought under Georgia, Arizona, and

Pennsylvania law fail for state-specific reasons. (*Id.* at 10.) The Court addresses each in turn.

### 1.      State Civil Conspiracy Claims Based on Racketeering Violations

Defendants assert the state-law civil conspiracy claims fail without a viable underlying

claim as a predicate for liability. (ECF No. 422 at 10.) Specifically, Defendants argue the state-

law civil conspiracy claims fail to the extent they are based on violations of federal or state

racketeering laws that have already been dismissed. (*Id* at 10–13.) Plaintiffs argue any surviving

state racketeering or state consumer fraud claim can serve as viable underlying claim for their

state-law civil conspiracy claims. (ECF No. 455 at 15.) Plaintiffs also contend they are not required

to plead an underlying claim as a separate cause of action for it to serve as a predicate to the state-

law civil conspiracy claims. (*Id*. at 16.)

"The established rule is that a cause of action for civil conspiracy requires a separate

underlying tort as a predicate for liability." *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193

---

[12] Under Count Ten of the Third Amended Complaint, Plaintiffs assert "[t]his claim is brought by
all plaintiffs against Defendants Novo Nordisk, Sanofi, and Eli Lilly, and alleges violations of the
civil conspiracy laws of the following states: Alabama, Arizona, Arkansas, California, Colorado,
Connecticut, Delaware, Florida, Georgia, Illinois, Indiana, Iowa, Kansas, Louisiana, Maine,
Maryland, Massachusetts, Michigan, Minnesota, Missouri, Nevada, New Jersey, New Mexico,
New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, South
Carolina, Tennessee, Texas, Utah, Virginia, and Wisconsin." (ECF No. 411 ¶ 525.)

F.3d 781, 789 (3d Cir. 1999); *Boyanowski*, 215 F.3d at 405–06 ("The rule that civil conspiracy may not exist without an underlying tort is a common one."); *Curbison v. New Jersey*, 242 F. App'x 806, 810 (3d Cir. 2007) ("A civil conspiracy claim requires a separate underlying tort as a prerequisite for liability."); *Hamborsky v. O'Barto*, 613 F. App'x 178, 182 (3d Cir. 2015). In surveying the civil conspiracy laws of several different states, the Third Circuit found "the law uniformly requires that conspiracy claims be predicated upon an underlying tort that would be independently actionable against a single defendant." *Id*. (collecting cases). The Third Circuit added "we are unaware of any jurisdiction that recognizes civil conspiracy as a cause of action requiring no separate tortious conduct." *Id.* "Thus, one cannot sue a group of defendants for conspiring to engage in conduct that would not be actionable against an individual defendant." *Pardue v. Gray*, 136 F. App'x 529, 533 (3d Cir. 2005) (quoting *Orthopedic Bone Screw*, 193 F.3d at 789).

Here, Plaintiffs allege "[a]mong the unlawful and tortious acts committed pursuant to and in furtherance of the conspiracy were (i) violations of the state and federal racketeering laws, including the predicate acts of mail and wire fraud; and (ii) violations of the various state law consumer fraud statutes." (ECF No. 411 ¶ 537.) Plaintiffs cannot base their state-law civil conspiracy claims on underlying claims that "would not be actionable against an individual defendant." *Pardue*, 136 F. App'x at 533 (quoting *Orthopedic Bone Screw*, 193 F.3d at 789). Because the federal racketeering claims were dismissed, the state-law civil conspiracy claims fail to the extent they are based on violations of federal racketeering law. Similarly, because the state racketeering claims were dismissed, Plaintiffs' state-law civil conspiracy claims fail to the extent they are based on violations of state racketeering laws, with the exception of Plaintiffs' civil

conspiracy claim under Arizona law.[13] Notwithstanding, because several of Plaintiffs' consumer fraud claims still survive, Plaintiffs have viable underlying claims to maintain their civil conspiracy causes of action. Accordingly, Defendants' Partial Motion to Dismiss Plaintiffs' state-law civil conspiracy claims is **GRANTED IN PART** and **DENIED IN PART.**

### 2.     State Civil Conspiracy Claims Based on Surviving Claims

Defendants assert the state-law civil conspiracy claims "should be dismissed as duplicative to the extent they are based on a state-law claim that survived [D]efendants' motions to dismiss." (ECF No. 422 at 13.) Defendants also contend the civil conspiracy claims should be dismissed as duplicative "because [P]laintiffs have made no effort to differentiate their civil conspiracy claims from their underlying claims." (ECF No. 468 at 8.) Plaintiffs argue the civil conspiracy claims are not duplicative because Plaintiffs may plead claims in the alternative or allege parallel theories of recovery. (ECF No. 455 at 18.)

Under Federal Rule of Civil Procedure 8(a)(2), a civil plaintiff is required to set forth "a short and plain statement of [his or her] claim showing that [he or she] is entitled to relief." "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. While Rule 8 does not require a plaintiff to provide detailed factual allegations, a plaintiff must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Compliance with Rule 8 requires a plaintiff to "give the defendants fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545 (internal citation omitted); *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007) (noting

---

[13] The Court determined Plaintiffs' state racketeering claim under Arizona law survives, and therefore, violations of the Arizona racketeering statute can serve as a predicate for liability to assert a state-law civil conspiracy claim under Arizona law.

the complaint must "provide the opponent with fair notice of a claim and the grounds on which

that claim is based").

Here, Defendants' contention that the civil conspiracy claims should be dismissed because

they are duplicative to the underlying claims is unconvincing. Defendants are essentially arguing

a civil conspiracy claim cannot exist alongside its underlying claim; even though an underlying

claim is required for maintaining a civil conspiracy claim. In any event, district courts in this circuit

have recognized civil conspiracy claims predicated on underlying consumer fraud claims. *See, e.g.*

*Unimed Int'l, Inc. v. Fox News Network, LLC*, Civ. A. No. 20-17335, 2021 U.S. Dist. LEXIS

66470, at *12 (D.N.J. Apr. 6, 2021) (holding because the consumer fraud claim, among others,

stated a claim for relief, "[p]laintiff's conspiracy claim also survives dismissal"); *Doherty v. Hertz*

*Corp.*, Civ. A. No. 10-00359, 2010 U.S. Dist. LEXIS 124714, at *25 (D.N.J. Nov. 24, 2010)

(holding the plaintiff "established a *prima facie* case of civil conspiracy" after successfully

pleading her consumer fraud claim); *Aqua Pharm., LLC v. Park Irmat Drug Corp*, Civ. A. No. 17-

2273, 2018 U.S. Dist. LEXIS 83652, at *13 n.7 (E.D. Pa. May 17, 2018) (finding "[b]ecause the

fraud claim survives, the civil conspiracy claim need not be dismissed"); *Vibra-Tech Eng'rs, Inc.*

*v. Kavalek*, 849 F. Supp. 2d 462, 494 (D.N.J. 2012) (finding a civil conspiracy was adequately

pleaded with consumer fraud as one of the underlying claims); *Gray v. CIT Bank, N.A.*, Civ. A.

No. 18-1520, 2018 U.S. Dist. LEXIS 216638, at *22 (D.N.J. Dec. 27, 2018) (holding because the

plaintiff stated a claim for consumer fraud, the "[m]otion to [d]ismiss the conspiracy claim will be

denied") *Szelc v. Stanger*, Civ. A. No. 08-4782, 2011 U.S. Dist. LEXIS 41827, at *32 (D.N.J. Apr.

15, 2011) (finding the civil conspiracy claim survived where the alleged state racketeering claim

survived to serve as the underlying claim).

Defendants point to no relevant authority in this circuit finding otherwise. To the extent

Defendants rely on *Impala Platinum Holdings Ltd. v. A1 Specialized Services & Supplies, Inc.*, the

civil conspiracy claims were not dismissed as duplicative, as Defendants contend. Civ. A. No. 16-

1343, 2016 U.S. Dist. LEXIS 127055 (E.D. Pa. Sep. 16, 2016). Rather, the court dismissed the

plaintiff's civil conspiracy claim for failing to adequately allege malice, an essential element of

civil conspiracy under Pennsylvania law. *Id.* at *68–69. Accordingly, Defendants' motion to

dismiss Plaintiffs' state-law civil conspiracy claims based on any surviving claims is **DENIED.**[14]

### 3.        Georgia and Arizona Civil Conspiracy Claims

Defendants argue the Georgia and Arizona civil conspiracy claims fail to the extent they

rely on the Georgia and Arizona consumer fraud claims that were dismissed. (ECF No. 422 at 15.)

Plaintiffs argue the Arizona and Georgia civil conspiracy claims remain supported by their

respective state racketeering allegations. (ECF No. 455 at 16.) Because Plaintiffs' state

racketeering claim under Arizona law survives, Plaintiffs' civil conspiracy claim under Arizona

law also survives. However, because both the Georgia state racketeering and consumer fraud

claims fail, Plaintiffs' civil conspiracy claim under Georgia law also fails. Accordingly,

---

[14] Defendants assert the state-law civil conspiracy claims should be dismissed as improper "shotgun pleading" because Plaintiffs "cram three dozen claims, each brough under the law of a different state, into a single count." (ECF No. 422 at 9.) Plaintiffs argue their civil conspiracy claims satisfy the notice pleading requirements without needing to separate each state-law civil conspiracy claim into different counts. (ECF No. 455 at 12.) Federal Rule of Civil Procedure 8(a)(2) requires pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A plaintiff is required to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable of the misconduct alleged." *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556)). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted). Plaintiffs' Third Amended Complaint recounts in nearly 300 pages Defendants' alleged scheme to defraud and conspiracy to inflate prices. The Court finds Defendants have fair notice of the claims asserted against them and the grounds upon which those claims rest.

Defendants' motion to dismiss is **GRANTED** as to Plaintiffs' civil conspiracy claim under

Georgia law and **DENIED** as to Plaintiffs' civil conspiracy claim under Arizona law**.**

### 4.      Pennsylvania Civil Conspiracy Claims

Defendants argue the Pennsylvania civil conspiracy claim fails because Plaintiffs have

failed to allege malice, which is an essential element for civil conspiracy under Pennsylvania law.

(ECF No. 422 at 16.) Plaintiffs argue they alleged "[D]efendants acted intentionally and with intent

to mislead, defraud, and deceive," which is sufficient to satisfy the malice requirement under

Pennsylvania law to maintain their civil conspiracy claim. (ECF No. 455 at 20.)

Under Pennsylvania law,

> to state a cause of action for civil conspiracy, the following elements
> are required: (1) a combination of two or more persons acting with
> a common purpose to do an unlawful act or to do a lawful act by
> unlawful means or for an unlawful purpose; (2) an overt act done in
> pursuance of the common purpose; and (3) actual legal damage.

*Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003) (citing

*Strickland v. Univ. of Scranton,* 700 A.2d 979, 987–88 (Pa. Super. Ct. 1997) (citation and internal

quotations marks omitted)). "Proof of malice is an essential part of a cause of action for conspiracy,

and malice requires that the conspirators act with the sole purpose of injuring the plaintiff."

*Sarpolis v. Tereshko*, 625 F. App'x 594, 601 (3d Cir. 2016) (citations and quotation marks

omitted); *see also Conquest v. WMC Mortg. Corp.*, 247 F. Supp. 3d 618, 637 (E.D. Pa. 2017)

(dismissing a civil conspiracy claim where the plaintiff "fail[ed] to allege any facts that suggest[ed]

the [defendants] acted contrary to their own legitimate business interests or with the sole intent to

harm him"). "Importantly, to state a claim for conspiracy under Pennsylvania law, 'it must be

alleged that the sole purpose of the conspiracy was to injure the Plaintiffs.'" *Zafarana v. Pfizer*

*Inc.*, 724 F. Supp. 2d 545, 559 (E.D. Pa. 2010) (quoting *Morilus v. Countrywide Home Loans, Inc.*,

651 F. Supp. 2d 292, 313 (E.D. Pa. 2008)). Therefore, "where the facts show that a person acted

to advance his own business interests, and not solely to injure the party injured, those facts negate

any alleged intent to injure." *Becker v. Chi. Title Ins. Co.*, Civ. A. No. 03-2292, 2004 U.S. Dist.

LEXIS 1988, at *13 (E.D. Pa. Feb. 4, 2004) (citing *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa.

198, 412 A.2d 466, 472 (Pa. 1979)).

Here, Plaintiffs allege:

> 526. As detailed above, each of the defendant drug manufacturers separately agreed with the PBMs to commit unlawful and tortious actions in fraudulently pricing the insulin products to consumers and the public. Each defendant drug manufacturer separately shared with the PBMs the common purposes of selling, purchasing, and administering the analog insulins to individual plaintiffs and class members and deriving secret profits from thee above-alleged spread scheme. These profits are greater than either the defendant drug manufacturers or the PBMs could obtain absent their fraudulent concealment of the substantial rebates from defendant drug manufacturers to PBMs.

> 527. To effectuate this common purpose, the defendant drug manufacturers periodically and systematically inflated the list prices of the analog insulins. They did so willfully, and with knowledge that class members make payments directly based on the manufacturers' list price. They then represented—either affirmatively or through half-truths and omissions—to the general public and consumers, including plaintiffs and the class, that the analog insulin list prices are a reasonable approximation of the actual cost of these medicines and a proper basis for consumer payments. The defendant drug manufacturers and PBMs then concealed from the general public and consumers, like the plaintiffs and class members, the reality that the net prices offered to PBMs in exchange for preferred formulary positions are exponentially lower.

> . . . .

> 532. In order to garner all of these fees from the defendant drug manufacturers, each PBM and each defendant drug manufacturer meet on a regular basis to discuss analog insulin prices, rebates, spreads, marketing opportunities, and coordination of all of the above.

533. There is a common communication network between each PBM and each manufacturer for the purpose of implementing the rebate scheme and for the exchange of financial rewards for the PBM activities that benefit the defendant drug manufacturers.

534. At all relevant times, each one of the PBMs was aware of the defendant drug manufacturers' spread scheme, was a knowing and willing participant in that scheme, and reaped profits from that scheme.

(ECF No. 411 ¶¶ 526–27; 532–34.) Plaintiffs' allegations do not sufficiently allege Defendants

acted with the sole purpose of injuring Plaintiffs. *Ruta Kretulskie v. Madison Nat'l Life Ins. Co.*,

Civ. A. No. 18-1357, 2019 U.S. Dist. LEXIS 176356, at *16 (M.D. Pa. Oct. 9, 2019) (dismissing

the civil conspiracy claim under Pennsylvania law where the plaintiff "does not fully satisfy the

requisites of state law by adequately pleading that the defendants acted with the sole purpose of

injuring the plaintiff"). Accordingly, Defendants' Partial Motion to Dismiss Plaintiffs' civil

conspiracy claim under Pennsylvania law is **GRANTED**.

## C.    Standing

Defendants argue Plaintiffs lack standing to pursue certain claims against certain

Defendants because no named Plaintiff "suffered an alleged injury from that defendant's product

in a given state." (ECF No. 422 at 17.) Plaintiffs do not substantively dispute this issue. Plaintiffs

acknowledge the Court's prior ruling regarding the standing of plaintiffs to bring "claims

concerning products that [they] neither purchased nor used." (*Id.* at 4 n.17 (citing the February

2019 Order).) Plaintiffs contend, however, "that for each claim, there is at least one plaintiff who

has alleged to have purchased one of the insulins at issue, so dismissal of these claims in their

entirety would be inappropriate." (ECF No. 455 at 4 n.17.)

The parties' positions are reconcilable. In the February 2019 Order, the Court held: "As

Plaintiffs have asserted multiple claims absent allegations of such products being purchased or

used in such jurisdictions, such claims cannot withstand this Motion to Dismiss." (ECF No. 252 at 35.) For each state where no named Plaintiff claims to have purchased a certain Defendant's insulin product, such plaintiff's claim under that state's law against said certain defendant is dismissed. Because there is at least one plaintiff who has alleged to have purchased one of the insulins at issue, no individual plaintiff's claim should be dismissed in its entirety. Accordingly, the parties are directed to provide a joint submission with an agreed upon list as to which claims fail as to certain Defendants where no Plaintiff from a given state purchased that Defendant's products.

## IV.   CONCLUSION

For the reasons set forth above, Defendants' Partial Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART.** Defendants' Partial Motion to Dismiss the state racketeering claims is **GRANTED** with respect to Colorado (Count Four), Georgia (Count Six), Utah (Count Eight), and Wisconsin (Count Nine) and **DENIED** with respect to Arizona (Count Three). Plaintiffs voluntarily withdrew their state racketeering claims with respect to Florida (Count Five) and North Carolina (Count Seven). Defendants' Partial Motion to Dismiss the state-law civil conspiracy claims is **GRANTED** to the extent Plaintiffs base their claims on violations of the federal racketeering law and the state racketeering laws of Colorado, Georgia, Utah, and Wisconsin and **DENIED** to the extent Plaintiffs base their civil conspiracy claim under Arizona law on violations of Arizona's state racketeering law. Defendants' Partial Motion to Dismiss the civil conspiracy claims under Georgia and Pennsylvania law are **GRANTED.** Defendants' Partial Motion to Dismiss the civil conspiracy claims under Arizona law is **DENIED.** Additionally, the Parties are directed to provide a joint submission with an agreed upon list as to which claims fail

as to certain Defendants where no Plaintiff from the respective state purchased that Defendant's products. An accompanying order will follow.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated:  December 17, 2021