James E. Cecchi
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
(973) 994-1700

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 2nd Ave., Suite 2000
Seattle, WA 98101
(206) 623-7292

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE INSULIN PRICING LITIGATION | Civil Action No. 2:17-cv-00699 (BRM)(ESK) |

# MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT

# TABLE OF CONTENTS

<u>Title</u>                                                                 <u>Page</u>

I.     TABLE OF AUTHORITIES ...................................................................... iii

I.     INTRODUCTION .................................................................................... 1

II.    BACKGROUND ...................................................................................... 5

       A.     The parties have engaged in hard-fought litigation for
              more than six years. ..................................................................... 5

       B.     The Plaintiffs and Lilly negotiate for nearly a year to
              produce the settlement. ................................................................ 6

       C.     Material terms of the settlement. ................................................. 7

              1.     Settlement class definition. ............................................. 7

              2.     Settlement relief. ............................................................. 8

              3.     Released claims. ............................................................ 12

III.   LEGAL ARGUMENT ............................................................................ 12

       A.     Preliminary approval of a class action is a two-step process. ............... 12

              1.     The proposed settlement is procedurally fair. ............... 16

              2.     The proposed settlement is substantively fair. ............. 17

                     a.     The settlement occurred after good faith,
                            arm's length negotiations conducted by well-
                            informed and experienced counsel. ................... 18

                     b.     The relief provided to the Class is adequate. ................. 19

                     c.     Plaintiffs' proposed method of distributing
                            relief to the Class is effective and treats class
                            members equitably. ........................................... 20

      d.    Proposed attorney's fees. .................................................21

B.    The Court should certify a settlement class ............................22

    1.    The proposed settlement class satisfies Rule 23(a). ..................23

        a.    Numerosity ............................................................24

        b.    Commonality .........................................................24

        c.    Typicality and adequacy ......................................26

    2.    The proposed settlement classes satisfy 23(b). .........................29

        a.    The injunctive relief class satisfies Rule 23(b)(2). ............................................................29

        b.    The damages class satisfies Rule 23(b)(3). ......................31

            (1)    Because Plaintiffs' unfair practices claims turn on proof of Lilly's conduct—not that of any individual purchaser—common legal and factual questions predominate over any individual issues ...............31

            (2)    The class action mechanism is the superior—and indeed the only—way to adjudicate hundreds of thousands of individual transactions. ...................34

    3.    The Court should approve the form and plan for disseminating notice to the settlement class. ...........................35

    4.    The Proposed Distribution Plan is Reasonable. .......................38

    5.    The Court should set a Fairness Hearing Schedule. .................38

IV.    CONCLUSION ................................................................................39

# TABLE OF AUTHORITIES

**Cases**                                                                                       **Page(s)**

*Alfaro v. First Advantage Lns Screening Solutions, Inc.*,
    2017 WL 3567974 (D.N.J. Aug. 16, 2017) ............................................................ 35

*In re Amaranth Nat. Gas. Commodities Litig.*,
    269 F.R.D. 366 (S.D.N.Y. 2010).......................................................................... 29

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ..............................................................................23, 32, 34

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013) ............................................................................................ 32

*Barnes v. Am. Tobacco Co.*,
    161 F.3d 127 (3d Cir. 1998) ............................................................................... 30

*Beck v. Maximus, Inc.*,
    457 F.3d 291 (3d Cir. 2006) ..........................................................................26, 27

*Beltran v. SOS Ltd.*,
    2023 WL 319895 (D.N.J. Jan. 3, 2023)............................................................. 22

*Buzzaro v. Ocean City*,
    2009 WL 1617887 (D.N.J. June 9, 2009)........................................................... 28

*Castro v. Sanofi Pasteur Inc.*,
    2017 WL 4776626 (D.N.J. Oct. 23, 2017).......................................................... 22

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ............................................................................... 13

*Ehrheart v. Verizon Wireless*,
    609 F.3d 590 (3d Cir. 2010) ............................................................................... 12

*In re Elec. Carbon Prod. Antitrust Litig.*,
    447 F. Supp. 2d 389 (D.N.J. 2006)..................................................................... 16

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) ........................................................................ 14

*Girsh v. Jepson*,
   521 F.2d 153 (3d Cir. 1975) ............................................................... 14, 15

*Glaberson v. Comcast Corp.*,
   2014 WL 7008539 (E.D. Pa. Dec. 12, 2014) ...................................... 19

*Halley v. Honeywell Int'l, Inc.*,
   2016 WL 1682943 (D.N.J. Apr. 26, 2016).......................................... 36

*In re Ikon Office Sols., Inc. Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000)............................................................ 22

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012).......................................................... 23

*In re Ins. Brokerage Antitrust Litig.*,
   579 F.3d 241 (3d Cir. 2009) ................................................................. 16

*James v. Global Tel*Link Corp.*,
   2020 WL 6197511 (D.N.J. Oct. 22, 2020).......................................... 22

*Kelly v. Realpage Inc.*,
   47 F.4th 202 (3d Cir. 2022) ................................................................. 10

*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
   2009 WL 4730185 (D.N.J. Dec. 4, 2009)........................................... 22

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)................................................. 38

*In re Mercedes-Benz Antitrust Litig.*,
   213 F.R.D. 180 (D.N.J. 2003) .............................................................. 32

*In re Modafinil Antitrust Litigation*,
   837 F.3d 238 (3d Cir. 2016) ................................................................. 24

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
　　187 F.R.D. 465 (S.D.N.Y. 1998) ........................................................................ 18

*In re Nat'l Football League*,
　　821 F.3d at 428 ............................................................................................. 28, 29

*In re Nat'l Football League Players Concussion Injury Litig.*,
　　775 F.3d 570 (3d Cir. 2014) ............................................................................ 15, 22

*In re PaineWebber Ltd. P'ships Litig.*,
　　171 F.R.D. 104 (S.D.N.Y. 1997) ........................................................................ 38

*In re Pet Food Prods. Liab. Litig.*,
　　2008 WL 4937632 (D.N.J. Nov. 18, 2008) .......................................................... 22

*In re Philips/Magnavox TV Litig.*,
　　2012 WL 1677244 (D.N.J. May 14, 2012) ........................................................... 18

*In re Prudential Insurance Company America Sales Practice Litigation*,
　　148 F.3d 283 (3d Cir. 1998) ............................................................. 14, 27, 34, 36

*In re Remicade Antitrust Litig.*,
　　2022 WL 3042766 ................................................................................... 25, 29, 32

*Rodriguez v. National City Bank*,
　　726 F.3d 372 (3d Cir. 2013) ............................................................................. 25

*Roofer's Pension Fund v. Paper*,
　　333 F.R.D. 66 (D.N.J. 2019) ............................................................................. 25

*In re Schering Plough Corp. ERISA Litig.*,
　　589 F.3d 585 (3d Cir. 2009) .......................................................................... 27, 28

*Sullivan v. DB Invs., Inc.*,
　　667 F.3d 273 (3d Cir. 2011) (*en banc*) .......................................................... 14, 31

*In re Valeant Pharmaceuticals Int'l Inc. Third Party Payor Litig.*,
　　2022 WL 252807 (D.N.J. Feb. 22, 2022) ............................................................. 22

*In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.,*
2023 WL 1818922 (D.N.J. Feb. 8, 2023) ......................................... 11, 33

*Varacallo v. Mass Mut. Life Ins. Co.,*
226 F.R.D. 207 (D.N.J. 2005) ................................................. 18, 32, 35

*Wal-Mart Stores, Inc. v. Dukes,*
564 U.S. 338 (2011) ........................................................... 25, 30

*In re Warfarin Sodium Antitrust Litig.,*
391 F.3d 516 (3d Cir. 2004) ..................................................... 12, 25

**Statutes**

Class Action Fairness Act, 28 U.S.C. § 1715 ...................................... 38, 39

**Other Authorities**

Fed. R. Civ. P. 23 .......................................................... *passim*

# I.   INTRODUCTION

Six years ago, Plaintiffs filed this action alleging that Defendant insulin manufacturers engaged in various unlawful commercial practices relating to the pricing of insulin. Plaintiffs alleged that Defendants raised their list prices in lockstep, which enabled ever-increasing payments to pharmacy benefit managers (PBMs) to buy formulary access. Plaintiffs allege this harmed consumers who paid for insulin based on inflated list prices set by Defendants. Defendant Eli Lilly has denied and continues to deny these allegations.

After litigating this complex case for six years, Plaintiffs and Eli Lilly negotiated a settlement that helps bring meaningful, patient-focused benefits to diabetes patients. This hard-fought result was reached with the help of a highly respected mediator, former Judge Joseph A. Dickson. The settlement was reached after completing extensive party discovery, including document review, fact witness depositions, meet and confers, motions to compel, as well as class certification-related discovery that included third-party discovery, economic modeling and analysis, and fulsome expert disclosures and depositions. The settlement will provide cash and extensive forward-looking relief to Settlement Class Members now rather than waiting years to obtain any potential recovery at trial. Through this settlement, any eligible user of Lilly insulin is guaranteed to have the option to purchase Lilly's

Humalog, Humulin, and Basaglar for no more than $35 out of pocket per month for at least the next four years through Lilly's Insulin Value Program, or an equivalent Lilly affordability initiative ("Affordability Solutions").[1] And should someone be unable to take part in the forward-looking relief or no longer take Lilly insulin products, Settlement Class Members who purchased a Lilly insulin covered by this settlement will receive cash payments from a common fund.[2] The settlement provides no reversion to Lilly and *completely freezes* the out-of-pocket insulin expenses for covered insulin products for the Settlement Class Members for four years, a very substantial concession in an era where drug prices are skyrocketing and inflation generally is a significant concern.

Most significantly, the insulin cost savings of this settlement come on the heels of significant changes in the insulin marketplace. Lilly recently announced list price reductions for its most commonly used insulins, and both Novo Nordisk and Sanofi lowered list prices within days of Lilly's price cuts.[3] Lilly's commitment in the

---

[1] *See* Ex. A ("Settlement Agreement"), to the Joint Declaration of James E. Cecchi and Steve W. Berman in Support of Plaintiffs' Motion for Preliminary Approval ("Joint Decl."), ¶ 43. Capitalized terms used herein are defined in the Settlement Agreement.

[2] Settlement Agreement ¶ 44.

[3] Rebecca Robbins, *Novo Nordisk Says It Will Slash the Price of Insulin*, N.Y. TIMES, Mar. 14, 2023, *available at* https://www.nytimes.com/2023/03/14/business/novo-nordisk-insulin-price.html; Rebecca Robbins, *Sanofi Plans to Cut the Price of Insulin*,

context of these fast-moving changes is a highly substantial factor that enhances the value of the non-monetary benefits provided by Lilly through this settlement and the litigation that preceded it.

On preliminary approval, the question is whether the Court "will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."[4] As explained below, the proposed settlement easily passes both tests.

First, the settlement ensures Lilly's insulins remain affordable. Any eligible user of Lilly insulin can purchase a covered Lilly insulin product at a total out-of-pocket expense of $35 per month.[5] If approved, the settlement enjoins Lilly by requiring Lilly to continue its Affordability Solutions for the covered Lilly insulins for four years, capping that Class Member's out-of-pocket cost for a month's supply of covered insulin products at $35.[6] Plaintiffs' expert estimates the total value of this forward-looking relief at over $500 million.[7]

---

N.Y. TIMES, Mar. 16, 2023, available at
https://www.nytimes.com/2023/03/16/business/sanofi-insulin-price.html.

[4] Fed. R. Civ. P. 23(e)(1)(B).

[5] Settlement Agreement ¶ 43.

[6] *Id.*

[7] Joint Decl. ¶ 19.

Second, Lilly will pay $13.5 million into a common fund to pay: (1) cash payments to Lilly insulin purchasers who are ineligible for the forward-looking relief; (2) expenses associated with notice and claims administration; (3) incentive awards to the class representatives; and (4) attorneys' fees and expenses.[8] Significantly, class counsel expect that they can identify the overwhelming majority of Settlement Class Members, notify them of the settlement, and verify approximately 99% of claims without the need for a Settlement Class Member to submit documentary proof.[9] Within 10 days of the entry of preliminary approval, Plaintiffs will subpoena data from the six largest PBMs and the seven largest pharmacy chains, a dataset that collectively covers 99% of insulin purchases. This transactional-level data can identify who purchased what product, how much they paid, and how to reach them (email or mailing address).

In sum, the settlement provides real relief for consumers and exceeds all applicable requirements of the law, including Rule 23(e)(2) and constitutional due process. The settlement notice will apprise Settlement Class Members of the action's pendency, the settlement terms, and their rights to opt out of or object to the

---

[8] Settlement Agreement ¶¶ 44-48, 80-85.

[9] Class Counsel anticipates the remaining 1% of prescriptions to be largely cash purchasers who bought at independent pharmacies. They may still submit a claim online to receive a direct payment.

settlement. For all these reasons, Plaintiffs respectfully request that the Court: (1) grant preliminary approval; (2) provisionally certify the settlement class; (3) appoint Plaintiffs as class representatives for the settlement class; (4) appoint Steve Berman of Hagens Berman Sobol Shapiro LLP and James Cecchi of Carella Byrne Cecchi Olstein Brody & Agnello, P.C. as Class Counsel; (5) approve AB Data as notice and settlement administrator; (6) approve the form and content of notice to the settlement class; and (7) schedule a fairness hearing.

## II.   BACKGROUND

### A.   The parties have engaged in hard-fought litigation for more than six years.

Plaintiffs initiated this litigation in February 2017 and have vigorously prosecuted this case ever since. On September 18, 2017, the Court appointed Carella Byrne and Hagens Berman as interim class counsel. Since that time, interim class counsel, additional counsel for Plaintiffs identified below, and their experts analyzed reams of documents, extensive data and spreadsheets, forecasts, and internal analyses provided by Lilly and the other Defendants. Plaintiffs purchased (at a significant cost) licenses necessary to access proprietary data maintained by IQVIA and other healthcare companies. Plaintiffs also issued many subpoenas to pharmacies, PBMs, and others to gather additional valuable information.

Plaintiffs took and defended dozens of depositions. Representatives of the three defendants, including Lilly, were deposed. All of these depositions were taken

virtually during the COVID-19 pandemic. With respect to 30(b)(6) depositions alone, Plaintiffs spent many hours meeting and conferring with Defendants and preparing for these depositions. And per the Court's Order appointing former Judge Dennis M. Cavanaugh as discovery Special Master, the parties exchanged letters and motions concerning discovery disputes. Lastly, per the Local Rules, the parties exchanged many letters that were never filed with the Court or Judge Cavanaugh and held many more meet and confers in an effort to negotiate compromise solutions, discuss discovery disputes in an effort to resolve or narrow them, or otherwise move the litigation ahead.

## B.    The Plaintiffs and Lilly negotiated extensively to produce the settlement.

Beginning in August 2022, the parties started settlement discussions under the guidance of retired Judge Joseph A. Dickson. The settlement discussions consisted of multiple in-person meetings and numerous telephone calls between the mediator and counsel. Throughout this process, the settlement negotiations were conducted by highly qualified and experienced counsel on both sides at arm's length.[10] Negotiations were hard-fought and non-collusive.[11] Armed with knowledge gained from years of discovery, ample research, and expert disclosures, Class Counsel

---

[10] Joint Dec. ¶¶ 12-13.

[11] *Id.* ¶ 14.

analyzed all the contested legal and factual issues to thoroughly evaluate Lilly's contentions and advocate during the settlement negotiations for a settlement that serves the best interests of the Class and provides fair and reasonable relief now. Although, like many settlement processes, the contours of the discussion changed over time, one consistent feature was that, as part of any resolution, Lilly would ensure that patients throughout the United States can purchase a covered Lilly insulin at no more than $35 out of pocket per month for a set period of time, and that those pricing commitments would be enforceable through a court order. This primary demand has been agreed to and is embodied in the Settlement Agreement, which asks the Court to certify, for settlement purposes, a settlement class under Rule 23(c)(2).

## C.    Material terms of the settlement.

### 1.    Settlement class definition.

The agreement defines the settlement class as follows:

> "Settlement Class" means, for settlement purposes only, all Persons in the United States who, during the Settlement Class Period, paid any portion of the purchase price for any Lilly Insulin Product—for themselves or on behalf of any family member or dependent—at a price calculated by reference to a list price, Average Wholesale Price ("AWP"), and/or Wholesale Acquisition Cost or Price ("WAC") for any purpose other than resale, no matter how that Person paid for the Lilly Insulin Product. For purposes of this Settlement Agreement, a price is calculated by reference to a list price, AWP, and/or WAC if the prescription for

a Lilly Insulin Product (a) was not a covered benefit under Health Coverage, was not processed through any applicable Health Coverage, or was otherwise purchased by a Person without Health Coverage; (b) was a covered benefit under Health Coverage but the Person was required to pay a portion in coinsurance; (c) was purchased during the deductible phase of any Health Coverage; or (d) was purchased by a Medicare Part D patient, including during any deductible or coverage gap phase or when the Person paid coinsurance.[12]

Excluded from the Settlement Class are (a) the Court and each of their personnel and the judicial officers presiding over the Action and members of their immediate family and staffs; (b) all counsel (and their law firms) representing Plaintiffs in the Action, including Plaintiffs' Class Counsel and members of their immediate family; (c) any Person who purchased Lilly Insulin Products exclusively through Medicaid; and (d) all Persons who are Opt-Outs.[13]

## 2.    Settlement relief.

As noted above, one of Plaintiffs' primary litigation objectives was to ensure that insulin would be affordable for all Americans potentially exposed to higher list

---

[12] Settlement Agreement ¶ 30.  The class definition also clarifies: "For the avoidance of doubt, if a Person purchased a Lilly Insulin Product on at least one occasion at a price calculated by reference to a list price, AWP, and/or WAC, as defined in this paragraph, that Person shall be a Settlement Class Member, even if on another occasion that Person purchased or received a Lilly Insulin Product that was not paid at a price calculated by reference to a list price, AWP, and/or WAC. " *Id.*

[13] *Id.*

prices. This settlement secures that objective. In particular, Lilly has agreed to make certain of its insulin products available to any eligible user of Lilly insulin who falls within the class definition for no more than $35 out of pocket a month for four years ("Forward-Looking Settlement Consideration").[14] This commitment, which can be enforced by Court order, is significant for many reasons, most notably because it provides meaningful, patient-focused benefits for Lilly insulin users, regardless of the complexities of the patient's commercial insurance or whether they have insurance at all.  For the next four years, no patient, anywhere in the United States, should have to pay more than $35 out of pocket a month for his or her prescription of a Lilly Insulin Product.

The agreement binds Lilly to ensure that patients have the option for years to pay no more than $35 out of pocket per month for a currently-marketed Lilly Insulin Product through Lilly's Affordability Solution. Because the insulin products at issue in this lawsuit are largely interchangeable, Plaintiffs believed that the other manufacturers, as a practical matter, would need to provide the same benefits to patients once the first manufacturer changed its practices. Plaintiffs allege that the high-list-price/high-rebate pricing scheme required participation and parallel action from all market participants. So if one defendant—in this case, Lilly—stopped

---

[14] *Id.* ¶ 43.

participating, it left the others with no choice but to follow or dramatically lose market share. For this reason, Plaintiffs view this icebreaker settlement as an important strategic milestone with the added value of "potentially helping to spur other parties to settlement."[15]

Importantly, shortly after Lilly announced its list price cuts, the other two major insulin manufacturers dropped list prices within days. These results prove the wisdom of the agreement: patients will have access to covered insulins with affordable out-of-pocket costs for at least four years, and the other defendants have shown they will act when another manufacturer takes the first step.

Lilly will also provide monetary payments to any Settlement Class Members who are ineligible for the Forward-Looking Settlement Consideration for any qualifying prior purchases, providing $13.5 million for a common fund to pay claims, administration expenses, counsel fees and expenses, and incentive awards.[16] Significantly, the process should not require the vast majority of Settlement Class Members to provide documentation with their Claim Form. On the contrary,

---

[15] *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003) ($ 7.2 million settlement had "significant value" because "early settlement with one of many defendants can "break the ice" and bring other defendants to the point of serious negotiations"); *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 697 (S.D.N.Y. 2019).

[16] Settlement Agreement ¶¶ 44-48.

pharmacy and PBM data allows Class Counsel to readily identify the overwhelming majority of Settlement Class Member transactions, determine the amount of the alleged overcharge, and distribute their share of the fund to them without burdening Settlement Class Members with need to locate receipts, medical records, or insurance documents.

Specifically, Plaintiffs will obtain PBM and pharmacy transactional data, for millions of individual insulin purchases made by eligible claimants during the Class Period. Because the data for each transaction contains the claimant's personal identifying information—for instance, names, email addresses, cell phone numbers, addresses, and insurance information—it allows Plaintiffs to identify nearly every insulin purchase made by the Settlement Claimant and all relevant information, including the amount spent out-of-pocket.[17] The data also permits the Claims Administrator to "match" or "link" purchases made by a single claimant at multiple locations to total their purchases during the Class Period. Then, using Dr. Rosenthal's damages methodology, the Claims Administrator can reach individual class members and provide payments based on their purchase histories.

---

[17] *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, 2023 WL 1818922, *16-*20 (D.N.J. Feb. 8, 2023) (finding that PBM and pharmacy records could be "linked" to ascertain class members) (citing cases).

The allocation process will involve a series of simple calculations based on Dr. Rosenthal's previous damage analyses for Lilly and *pro rata* allocation for Humulin purchases using the data routinely generated, used, and stored within this market. The calculation will be made by reference to each claimant's combined total eligible purchases made during the Class period, easily satisfying ascertainability.[18]

### 3. Released claims.

In consideration for the settlement, effective automatically upon the entry of the Final Judgment, the Releasing Parties will dismiss their claims against Lilly with prejudice and, consistent with the terms of the Settlement Agreement, release all claims that Plaintiffs have asserted or could have asserted in the actions relating to the conduct alleged, as set forth in more detail in the Settlement Agreement.[19]

## III. LEGAL ARGUMENT

### A. Preliminary approval of a class action is a two-step process.

A class action settlement is subject to court approval under Rule 23(e).[20] The 2018 amendments to Rule 23(e) make clear that the same factors governing final

---

[18] *Kelly v. Realpage Inc.*, 47 F.4th 202, 224 (3d Cir. 2022) ("Together, *Byrd*, *Hargrove*, and *City Select* instruct that a straightforward "yes-or-no" review of existing records to identify class members is administratively feasible even if it requires review of individual records with cross-referencing of voluminous data from multiple sources. And that is precisely what we have here.") (citing cases).

[19] Settlement Agreement ¶¶ 66-77.

[20] *See* Fed. R. Civ. P. 23(e).

approval under Rule 23(e)(2) also guide preliminary approval. Under Rule 23(e)(1)(B), the parties must "show[] that the [C]ourt will likely be able to: (i) approve the [settlement] proposal under Rule 23(e)(2); and, (ii) certify the class for purposes of judgment on the proposal."[21]

It is also clear that the settlement of complex class action litigation is still strongly favored and in the overriding public interest,[22] and that a presumption of fairness applies when, as here: "(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected."[23]

There are two steps to approval: preliminary and final approval.[24] Preliminary approval requires that the parties proposing the settlement make a showing that the Court is likely able to: (i) approve the proposal under Rule 23(e)(2) and (ii) certify

---

[21] Fed. R. Civ. P. 23(e)(1)(B).

[22] *See, e.g.*, *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010) ("Settlement [a]greements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts."); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("There is an overriding public interest in settling class action litigation, and it should therefore be encouraged.").

[23] *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n.18 (3d Cir. 2001)).

[24] Fed. R. Civ. P. 23(e).

the class for purposes of judgment on the proposal.[25] At preliminary approval, the Court must assess whether it "will likely be able to approve the proposal" under the four factors enumerated by Rule 23(e)(2): (A) "the class representatives and class counsel have adequately represented the class"; (B) "the proposal was negotiated at arm's length"; (C) "the relief provided for the class is adequate," after accounting for (i) "the costs, risks, and delay of trial and appeal," (ii) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," (iii) "the terms of any proposed award of attorney's fees, including timing of payment," and (iv) "any agreement required to be identified under Rule 23(e)(3)"; and (D) "the proposal treats class members equitably relative to each other."[26] The first two factors focus on procedural fairness, while the latter two factors (and subfactors) focus on substantive fairness. If the preliminary approval criteria are met, the Court must also consider whether it is likely to certify a class for settlement purposes.[27] A class may be certified for the purposes of settlement only.[28] These factors—a combination of the factors formerly considered under *Girsh v.*

---

[25] Fed. R. Civ. P. 23(e)(1)(B).

[26] Fed. R. Civ. P. 23(e)(2).

[27] *See* Fed. R. Civ. P. 23(e)(1)(B)(ii).

[28] *See, e.g., Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 310-11 (3d Cir. 2011) (*en banc*); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 777-78 (3d Cir. 1995).

*Jepson*[29] and *In re Prudential Insurance Company America Sales Practice Litigation*[30]—are intended to focus the parties and the Court's attention on a shorter list of factors relating to the propriety of a proposed class settlement.[31] Significant overlap exists between the factors in the 2018 amendments to Rule 23 and the *Girsh* factors and under the two frameworks.

Second, after notice of the settlement is provided to the class and the court conducts a fairness hearing, the court may grant final approval of the settlement.[32] The Manual for Complex Litigation advises:

> If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b).[33]

---

[29] 521 F.2d 153, 157 (3d Cir. 1975).

[30] 148 F.3d 283, 323-24 (3d Cir. 1998).

[31] *See* Fed. R. Civ. P. 23, Advisory Committee Notes, 2018 Amendments, Subdivision (e)(2) ("A lengthy list of factors can take on an independent life, potentially distracting attention from the central concerns that inform the settlement-review process. [. . .] This amendment therefore directs the parties to present the settlement to the court in terms of a shorter list of core concerns, by focusing on the primary procedural considerations and substantive qualities that should always matter to the decision on whether to approve the proposal.").

[32] Fed. R. Civ. P. 23(e).

[33] Ann. Manual Complex Lit. § 21.632 (4th ed. May 2019 update); *see In re Nat'l Football League Players Concussion Injury Litig.*, 775 F.3d 570, 582 (3d Cir. 2014).

1. **The proposed settlement is procedurally fair.**

The Court must first consider whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length."[34] In assessing adequacy of representation, the court focuses on whether 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.[35] Where an experienced class counsel has negotiated an arm's length agreement after "meaningful discovery," "the maturity and correctness of the settlement becomes all the more apparent."[36] That presumption also applies when, as here, a settlement is reached with the assistance of a mediator. Here, the presumption of fairness, reasonableness, and adequacy applies. Plaintiffs' interests are aligned with the remainder of the Settlement Class: each suffered the same alleged injury and has the same interest in maximizing recovery and limiting future out-of-pocket costs for insulin.[37]

---

[34] Fed. R. Civ. P. 23(e)(2)(A)–(B).

[35] *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 272 (3d Cir. 2009).

[36] *In re Elec. Carbon Prod. Antitrust Litig.*, 447 F. Supp. 2d 389, 400 (D.N.J. 2006).

[37] 1 Newberg on Class Actions § 3:58 (5th ed. 2021) ("Adequacy does not require complete identity of claims or interests between the proposed representative and the class. All that is required—as the phrase 'absence of conflict' suggests—is sufficient similarity of interest such that there is no affirmative antagonism between the representative and the class." (citations omitted)).

Class Counsel are highly qualified. They have represented classes in numerous other cases, including against pharmaceutical companies and involving complex pricing claims, are highly experienced in prosecuting complex class actions, and view the settlement as a fair and adequate result.[38] Class Counsel's view is well informed: over six years of discovery, Plaintiffs' counsel reviewed ample documents, took or defended dozens of depositions, worked extensively with highly qualified consultants and experts, and briefed numerous additional motions.[39] The agreement was also reached at arm's length. Class Counsel extensively negotiated the settlement with Lilly, including at in-person mediation sessions supervised by a highly experienced, respected, and neutral mediator.[40] This Court should find that Rule 23(e)(2)(A) and (B) are met and that the Settlement is therefore procedurally fair.

**2.    The proposed settlement is substantively fair.**

Next, the Court must assess substantive fairness. Rule 23(e)(2)(C) enumerates four factors to be considered: (i) "the costs, risks, and delay of trial and appeal," (ii) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," (iii) "the terms of any

---

[38] Joint Decl. ¶ 8.

[39] *Id.* ¶ 9.

[40] *See id.* ¶¶ 12-16.

proposed award of attorney's fees, including timing of payment," and (iv) "any agreement required to be identified under Rule 23(e)(3)."

### a. The settlement occurred after good faith, arm's length negotiations conducted by well-informed and experienced counsel.

The settlement follows extensive arm's-length negotiations undertaken in good faith by counsel for the parties. As noted above, the parties' extensive negotiations included mediation under the guidance of Hon. Joseph Dickson (Ret.).

Throughout their negotiations, the parties weighed the strengths and weaknesses of the Class's claims and Lilly's defenses, including consideration of, among other issues, liability, and damages. The settlement came after years of extensive motion practice and discovery.[41] When the settlement was reached, Plaintiffs were well informed regarding their case against Lilly and the likelihood of recovery from Lilly. As a result, Plaintiffs and Class Counsel had an adequate basis for assessing the strengths of the Class's claims and the risks of continued litigation against Lilly when they entered into the settlement.

Moreover, Class Counsel—firms with extensive experience in complex class actions, and consumer protection claims in particular—believes that the settlement is

---

[41] *See In re Philips/Magnavox TV Litig.*, 2012 WL 1677244, at *11 (D.N.J. May 14, 2012) ("Where this negotiation process follows meaningful discovery, the maturity and correctness of the settlement become all the more apparent.").

in the best interests of the Class. Counsel's judgment is entitled to considerable weight.[42] The settlement is also fully supported by Plaintiffs.

That the settlement stems from arm's length negotiations between experienced and well-informed counsel, with the help of a neutral mediator, demonstrates that the way the settlement was reached was fair and not the product of collusion.[43] The process leading to the present settlement strongly supports the Court's granting of preliminary approval.

### b.       The relief provided to the Class is adequate.

Under Rule 23(e), the Court must also consider whether the relief to the class is adequate, considering "the costs, risks, and delay of trial and appeal."[44]

As explained above, Lilly has agreed to make its insulin products covered by this settlement available to eligible consumers for no more than $35 out of pocket

---

[42] *See Varacallo v. Mass Mut. Life Ins. Co.*, 226 F.R.D. 207, 240 (D.N.J. 2005) ("Class Counsel's approval of the Settlement also weighs in favor of the Settlement's fairness."); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (Courts have consistently given "'great weight' . . . to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.").

[43] *See, e.g., Glaberson v. Comcast Corp.*, 2014 WL 7008539, at *4 (E.D. Pa. Dec. 12, 2014) (a settlement is presumed to be fair "when the negotiations were at arm's length, there was sufficient discovery, and the proponents of the settlement are experienced in similar litigation").

[44] Fed. R. Civ. P. 23(e)(2)(C)(i).

for a month's supply for four years, plus pay $13.5 million for the payment of claims, administrative expenses associated with the settlement, and counsel fees and expenses. This case has already been litigated for more than six years. As with any trial, the trial here posed an inherent risk. Moreover, as outlined in the procedural history, Lilly, as with the other defendants, has shown a willingness to litigate this matter to the fullest. It would be a virtual certainty that Lilly would appeal any adverse judgment, resulting in further delay in any recovery on behalf of the Class. While Plaintiffs believe their case is strong, there is also an inherent benefit to a certain result now rather than the risks of trial (and appeal) where there is a chance of a greater recovery but a chance of no recovery as well, and a near certainty of delay in any event.

         **c.**      **Plaintiffs' proposed method of distributing relief to the Class is effective and treats Settlement Class Members equitably.**

In connection with the approval of the notice of the Settlement, processing Class Member Claims, and making distributions to Settlement Class Members, Plaintiffs also seek approval of AB Data as the Notice and Settlement Administrator to supervise and administer the notice procedure, described below, in connection with the Settlement as well as the processing of Claims. AB Data is a nationally recognized notice and claims administration firm with extensive experience in settlement administration and will adequately fulfill its duties here.

The proposed method of distributing relief to the class is simple. Specifically, Plaintiffs will subpoena data from the six largest PBMs[45] and the seven largest pharmacies.[46] From this data, Plaintiffs can use Dr. Rosenthal's methodology to identify the qualifying purchases of any Eligible Settlement Claimant and calculate individual payments for each. Once all claims have been made and processed, the Claims Administrator will mail checks or process electronic payments for each Eligible Settlement Claimant for their share of the settlement fund. The process is manageable and easily accomplished even though there are hundreds of thousands of Settlement Class Members. This method easily satisfies Rules 23(e)(2)(C)(ii) and 23(e)(2)(D).

### d. Proposed attorney's fees.

Class counsel sought to achieve an immediate far-reaching benefit for consumers. That benefit is worth many hundreds of millions of dollars. Despite this, Class Counsel only seeks a relatively small attorney fee from this settlement. Specifically, Class Counsel will seek the Court's approval of no more than

---

[45] The top six PBMs are CVS (Caremark), United Health (OptumRx), Cigna (Express Scripts), Humana Pharmacy Solutions, MedImpact Healthcare Systems, and Prime Therapeutics, who manage roughly 96% of prescription claims in the United States.

[46] The top seven pharmacies are CVS, Walgreen's, Cigna, UnitedHealth, Walmart, Kroger, Rite Aid, who fill roughly 70% of the country's prescriptions.

$6,000,000 to reimburse counsel for litigation expenses plus attorney's fees. Including the value of the Forward-Looking Settlement Consideration and the future savings the settlement provides, the fee request represents a small fraction of the settlement's total value, which falls far below the usual and customary fee of one-third of the class benefit.[47]

## B.   The Court should certify a settlement class.

The Third Circuit has long upheld the propriety of certifying a class solely for settlement purposes.[48] Moreover, certification of a settlement class "has been

---

[47] *E.g., Beltran v. SOS Ltd.*, 2023 WL 319895, at *8 (D.N.J. Jan. 3, 2023) ("In common fund cases, the fees typically awarded to class counsel generally range between 19% to 45% of the settlement fund."); *In re Valeant Pharmaceuticals Int'l Inc. Third Party Payor Litig.*, 2022 WL 252807, at *8 (D.N.J. Feb. 22, 2022); ("30% of a fund is a typical fee award."); *James v. Global Tel*Link Corp.*, 2020 WL 6197511, at *10 (D.N.J. Oct. 22, 2020) (award of 30.5% of settlement fund "is well within the reasonable range of awards approved by the Third Circuit and is consistent with similar class action settlements); *Castro v. Sanofi Pasteur Inc.*, 2017 WL 4776626, at *9 (D.N.J. Oct. 23, 2017) ("The one-third fee is within the range of fees typically awarded within the Third Circuit through the percentage-of-recovery method; the Circuit has observed that fee awards generally ranged from 19% to 45% of the settlement fund. . . . Thus, the requested fee in this matter [of one-third of the settlement fund] is within the normal range."); *La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 2009 WL 4730185, at *8 (D.N.J. Dec. 4, 2009) ("[c]ourts within the Third Circuit often award fees of 25% to 33⅓% of the recovery"); *In re Ikon Office Sols., Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("Percentages awarded have varied considerably, but most fees appear to fall in the range of nineteen to forty-five percent.").

[48] *See, e.g., In re NFL Players Concussion Injury Litig.*, 775 F.3d 570, 583 (3d Cir. 2014) ("[P]reliminary analysis of a proposed class is . . . a tool for settlement used by the parties to fairly and efficiently resolve litigation.") (emphasis in original); *In re Pet*

recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants."[49] As demonstrated below, the proposed Settlement Class satisfies these requirements.

### 1. The proposed settlement class satisfies Rule 23(a).

Rule 23(a) of the Federal Rules of Civil Procedure sets forth the prerequisites for a class and requires that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.[50]

As relevant here, Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members,

---

*Food Prods. Liab. Litig.*, 2008 WL 4937632, at *3 (D.N.J. Nov. 18, 2008) ("Class actions certified for the purposes of settlement are well recognized under Rule 23.").

[49] *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012). Still, a settlement class, like other certified classes must satisfy all requirements of Rules 23(a) and (b), though the manageability concerns of Rule 23(b)(3) are not at issue for a settlement class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested.").

[50] Fed. R. Civ. P. 23(a); *see also Russell*, 15 F.4th at 265-6 (citations omitted).

and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[51]

### a.    Numerosity

Rule 23(a) requires that a class be "so numerous that joinder of all members is impracticable[.]"[52] In the Third Circuit, this prong is generally satisfied where "'the named plaintiff demonstrates the potential number of plaintiffs exceeds 40[.]'"[53] Here, the Settlement Class size conservatively includes hundreds of thousands of geographically diverse individuals,[54] which exceeds the threshold of 40 persons. As such, the Settlement Class meets the numerosity requirement.[55]

### b.    Commonality

---

[51] Fed. R. Civ. P. 23(b).

[52] Fed. R. Civ. P. 23(a)(1).

[53] *In re Modafinil Antitrust Litigation*, 837 F.3d 238, 249-50 (3d Cir. 2016) (quoting *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001)).

[54] *See* Joint Decl. ¶ 26.

[55] *See, e.g.*, *Modafinil*, 837 F.3d at 250 (recognizing that "[l]eading treatises have collected cases and recognized the general rule that . . . '[a] class of 41 or more is usually sufficiently numerous . . . .'") (citations omitted) (second alteration in original).

Rule 23(a) requires that there be "questions of law or fact common to the class[.]"[56] This commonality requirement is satisfied "if the Named Plaintiffs share at least one question of law fact or law with the grievances of the prospective class."[57]

Here, Class Plaintiffs allege that Lilly's pricing policies were directed at the insulin market generally and affected in the same way all persons whose out-of-pocket payments were based, in whole or in part, on the list price in the same way—when Lilly raised list prices, the out-of-pocket cost that putative class members paid went up too. As alleged, this course of conduct by Defendants is a question of fact common to all putative class members, which underlies all of their claims.[58] This case involves further legal and factual questions arising from this same course of

---

[56] Fed. R. Civ. P. 23(a).

[57] *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528. (3d Cir. 2004); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) ("We quite agree that for purposes of Rule 23(a)(2) even a single common question will do.") (internal quotation marks and citations omitted); *Rodriguez v. National City Bank*, 726 F.3d 372, 381 (3d Cir. 2013) ("That burden is not onerous. It does, however, require an affirmative showing that the class members share a common question of law or fact.") (citing *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 306 (3d Cir. 2011)).

[58] *See In re Remicade Antitrust Litig.*, 2022 WL 3042766, at *5 ("Commonality is met in this case because each Class Member's claim depends on whether Defendants unlawfully engaged in anticompetitive behavior.") (citations omitted); *see also Roofer's Pension Fund v. Paper*, 333 F.R.D. 66, 75 (D.N.J. 2019) (finding commonality requirement met where "[t]he class claims are predicated upon the same underlying misrepresentations and commissions by Defendants, presenting common issues of both fact and law arising thereunder.").

conduct about whether the prices charged by Lilly were unfair or unconscionable under applicable law.

For these reasons, the commonality requirement of Rule 23(a) has been met.[59]

### c.    Typicality and adequacy

As this Court has observed, "[t]he adequacy and typicality analyses under Rules 23(a)(3) and 23(a)(4), often merge and may, therefore, be discussed together."[60] The typicality predicate set forth in Rule 23(a)(3) requires that "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."[61] "'[E]ven relatively pronounced factual differences will generally not preclude a finding of typicality where this is a

---

[59] *See, e.g.*, *Smith*, 2019 WL 3281609, at *3 ("In resolving the merits of Plaintiffs' claims, therefore, the focus is on Defendants' salary grade structure and the resulting harm is caused, and not factual differences among individual class members. The Court, accordingly, finds that the proposed class satisfies the commonality and predominance requirements of Rules 23(a)(2) and 23(B)(3), respectively.").

[60] *Smith*, 2019 WL 3281609, at *3; *see also Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006) ("The Supreme Court has noted that the typicality and adequacy inquires often 'tend to merge' because both look to potential conflicts and to 'whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.") (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) (further citations omitted)).

[61] Fed. R. Civ. P. 23(a).

strong similarity of legal theories' or where the claim arises from the same practice or course of conduct."[62]

As for adequacy, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."[63] "The adequacy inquiry 'serves to uncover conflicts of interest between the named parties and the class they seek to represent' [and 'i]t assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class.'"[64] This predicate to class certification mandates two steps of inquiry ". . . designed to ensure that absentees' interests are fully pursued."[65] The first step of inquiry "tests the qualifications of the counsel to represent the class" while the second "seeks 'to uncover conflicts of interest between named parties and the class they seek to

---

[62] *Prudential II*, 148 F.3d at 312 (quoting *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994)); *see also Russell*, 15 F.4th, at 271 n.4 ("We have 'set a low threshold for typicality.'") (quoting *In re Nat'l Football League*, 821 F.3d at 428).

[63] Fed. R. Civ. P. 23(a)(4).

[64] *Beck*, 457 F.3d at 296 (quoting *Amchem*, 521 U.S. at 591; *Baby Neal*, 43 F.3d at 55) (internal references omitted).

[65] *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 602 (3d Cir. 2009) (quotation marks omitted) (quoting *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 630 (3d Cir. 1996), *aff'd, Amchem*, 521 U.S. 591).

represent.'"[66] "When examining settlement classes, [the Third Circuit 'has] emphasized the special need to assure that class counsel: (1) possessed adequate experience; (2) vigorously prosecuted the action; and (3) acted at arm's length from the defendant."[67] "The burden to prove representation is not adequate resets with the party challenging the class representation."[68] As for the second step of the inquiry, "[t]he 'linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class.'"[69]

The Court has already approved Interim Lead Counsel to represent the proposed classes here and is familiar with their credentials, experience, and expertise in litigating this matter. Class Counsel are, therefore, more than adequate for certification purposes.

As for the second portion of the adequacy inquiry and the typicality analysis, the claims of all Class Plaintiffs and Settlement Class Members arise from Lilly's alleged pricing conduct for its insulin products. Plaintiffs contend that Lilly's pricing affected all Settlement Class Members because they purchased the relevant products

---

[66] *In re Schering Plough Corp.*, 589 F.3d at 602.

[67] *In re NFL Players*, 821 F.3d at 431 (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.* 55 F.3d 768, 801 (3d Cir. 1995)).

[68] *Buzzaro v. Ocean City*, 2009 WL 1617887, at *14 (D.N.J. June 9, 2009).

[69] *See In re NFL Players*, 821 F.3d at 431 (quoting *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir. 2012)).

paying a price directly tied to the list price. Accordingly, the interests of Class Members and Class Plaintiffs are entirely aligned because they arise from the same alleged practice or course of conduct by Defendants, rely on identical legal theories, and Class Plaintiffs should not be subject to any unique defenses.[70] Class Plaintiffs, therefore, respectfully contend that the Court should find that the typicality and adequacy requirements are met.[71]

### 2. The proposed settlement classes satisfy 23(b).

#### a. The injunctive relief class satisfies Rule 23(b)(2).

Under Rule 23(b)(2), a class action may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate

---

[70] *See In re NFL Players*, 821 F.3d at 431 (affirming the district court's conclusion that "the incentives of class members were aligned because they 'allegedly were injured by the same scheme . . . .'") (cited reference omitted).

[71] *See, e.g., In re Remicade Antitrust Litig.*, 2022 WL 3042766, at *7 (E.D. Pa. Aug. 2, 2022) ("Here, because the Named Plaintiffs' and Class Members' claims arise out of the same conduct and are based on the same legal theories[] . . . the Court concludes the typicality factor is satisfied.") (citing *In re Wellbutrin XL Antitrust Litig.*, 282 F.R.D. 126, 138 (E.D. Pa. 2011)); *In re Amaranth Nat. Gas. Commodities Litig.*, 269 F.R.D. 366, 379 (S.D.N.Y. 2010) (typicality requirement met where plaintiffs and the class "transacted in the same contracts, in the same centralized marketplace, [and] were negatively impacted by the same common course of manipulative conduct from which the same group of defendants is alleged to be legally responsible for the damages[.]").

respecting the class as a whole."[72] "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or none of them."[73] The Third Circuit has regularly held certification under Rule 23(b)(2) requires cohesiveness of class claims among the class members.[74] The Third Circuit articulated the following two reasons for the cohesiveness requirement. "First, unnamed members with valid individual claims are bound by the action without the opportunity to withdraw and may be prejudiced by a negative judgment in the class action."[75] Second, "the suit could become unmanageable and little value would be gained in proceeding as a class action ... if significant individual issues were to arise consistently."[76] In other words, Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to a *different* injunction or declaratory judgment against the defendant."[77]

---

[72] Fed. R. Civ. P. 23(b)(2).

[73] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011).

[74] *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 142 (3d Cir. 1998).

[75] *Id.* at 143.

[76] *Id.*

[77] *Wal-Mart*, 564 U.S. at 360 (emphasis in original).

Here, the certification of a Rule 23(b)(2) settlement class is appropriate because the injunctive relief, which ensures that eligible patients will have the option to purchase their monthly supply of a Lilly Insulin Product for no more than $35 out of pocket, is the same for all eligible Settlement Class Members. It is the same activity, the ability to pay no more than $35 out of pocket per month through the Affordability Solutions for a Lilly Insulin Product, that is required as to all eligible Settlement Class Members.

### b.   The damages class satisfies Rule 23(b)(3).

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The proposed Settlement Class meets this standard.

> **(1)   Because Plaintiffs' unfair practices claims turn on proof of Lilly's conduct—not that of any individual purchaser—common legal and factual questions predominate over any individual issues.**

To satisfy Rule 23(b)(3)'s requirement that common questions of law and fact predominate, "the predominance tests asks whether a class suit for the unitary adjudication of common issues is economical and efficient in the context of all the

issues in the suit."[78] The touchstone of predominance is whether the proposed class is "sufficiently cohesive to warrant adjudication by representation."[79] The rule, however, "does *not* require a plaintiff seeking class certification to prove that every element of her claim is susceptible to classwide proof."[80] Instead, predominance is determined by whether "the efficiencies gained by class resolution of common issues are outweighed by individual issues."[81] "Third Circuit 'precedent provides that the focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct.'"[82] "The Third Circuit has counseled that courts should be 'more inclined to find the predominance test met in the settlement context.'"[83]

---

[78] *Sullivan v. D.B. Investments, Inc.*, 667 F.3d 273, 297 (3d Cir. 2010) (quoting Rubenstein, *Newberg on Class Actions* § 4:25 (4th ed. 2010)).

[79] *Amchem*, 521 U.S. at 597.

[80] *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) (internal quotation marks and alterations omitted).

[81] *Varacallo*, 226 F.R.D. at 231; *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 186 (D.N.J. 2003) (predominance requires that "common issues be both numerically and qualitatively substantial in relation to the issues peculiar to individual class members").

[82] *In re Remicade*, 2022 WL 3042766, at *7 (quoting *Sullivan* 667 F.3d at 298).

[83] *Remicade*, *id.* (quoting *NFL Concussion* 821 F.3d at 434 as amended (May 2, 2016) (quoting *Sullivan*, 667 F.3d at 304 n.29)).

Here, the predominance requirement under Rule 23(b) is satisfied for many of the same reasons that the commonality requirement of Rule 23(a) is satisfied. Lilly's conduct was directed at the insulin market, not individuals, because the core alleged misconduct involved pricing actions that affected the entire class. This means that, if taken to trial, Plaintiffs' claims would turn not on any individual experience but on evidence of Lilly's alleged pricing actions—namely, allegations that Lilly chose to engage in parallel pricing with market competitors and inflate list prices on consumers, while offering secret rebates to middleman-PBMs that reflected the drugs' true, declining value. Moreover, all Settlement Class Members suffered the same alleged harm as a result of Lilly's alleged conduct; they all paid a percentage of the allegedly artificially inflated list price. Courts in this district have found common issues predominate for classes far more complex than this without even the benefit of the more permissive settlement standard applicable here.[84] The proposed Settlement Class, therefore, meets the predominance requirement of Rule 23.

---

[84] *See, e.g., In re Valsartan*, No. 19-2875 (RBK/SAK), 2023 WL 1818922, at *15 (D.N.J. Feb. 8, 2023) ("Based on its research, the Court finds the Rule 23(b)(3) predominance standard has been met: there is a singular pleaded conduct—defendants' contamination of VCDs—which applies unilaterally to each consumer plaintiff in each subclass because each purchased the contaminated VCDs. [. . .] [T]he Court agrees that plaintiffs' naming subclasses that divide the ConEcoLoss class into smaller, even if numerous, groupings that track variability in legal issues is legally efficient and proper.").

(2)   **The class action mechanism is the superior—and indeed the only—way to adjudicate hundreds of thousands of individual transactions.**

The last remaining criterion for certification is that the Court must be likely to find, under Rule 23(b)(3), that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[85] "The matters pertinent to these findings include (A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any ligation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; and, (D) the likely difficulties in managing a class action."[86] Courts also consider whether "a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decisions as to persons similarly situated . . . ."[87]

Similar to this Court's observations in *Smith*, the Settlement Class here contains more than 100,000 members. So "absent certification, they would have to conduct individual trials, which would likely prove too costly for individuals"—

---

[85] *See also Prudential II*, 148 F.3d at 316.

[86] *Id.*

[87] *Amchem*, 521 U.S. at 615.

especially considering the relatively small amount of individual damages—would burden the Court."[88] Accordingly, judicial economy and economic barriers to individual enforcement demonstrate the superiority of the class action mechanism to other available options for adjudicating the Settlement Class's Claims.[89]

### 3.    The Court should approve the form and plan for disseminating notice to the settlement class.

The proposed notice program is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."[90] Direct mail, email, and/or text notice will be sent to potential Settlement Class Members.[91] Together with these efforts, a dedicated website will be maintained so that anyone can read about the settlement and easily find all documents pertinent to the settlement.[92] An automated toll-free number will also be available.[93] Settlement Class Members will also receive constructive notice

---

[88] *Smith*, 2019 WL 3281609, at *4 (quoting and citing *Alfaro v. First Advantage Lns Screening Solutions, Inc.*, 2017 WL 3567974, at *4 (D.N.J. Aug. 16, 2017)).

[89] *See, e.g.*, *Alfaro*, 2017 WL 3567974, at *4; *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 233 (D.N.J. 2005) (class satisfied the superiority requirement where it was "unlikely that individual Class Members would have the resources to pursue successful litigation on their own.").

[90] Fed. R. Civ. P. 23(c)(2)(B).

[91] Declaration of Eric J. Miller ("Miller Decl."), ¶¶ 15-16.

[92] *Id.* ¶ 24.

[93] *Id.* ¶ 23.

using targeted digital banner and newsfeed advertisements placed on websites and applications, and by a news release disseminated via PR Newswire's US1 distribution list.

Plaintiffs request that the Court approve the form of the proposed notices, substantially in the forms attached as Exhibits B – D of the Miller Declaration, as well as the proposed plan for providing notice of the settlement to Settlement Class Members as outlined in the Preliminary Approval Order.[94] In clear, concise, and plain language, the proposed Notice will "provide all the required information concerning the class members' rights and obligations under the settlement."[95] The Notice will advise recipients of, among other things, the nature of the Action, the definition of the Class, the essential terms of the settlement (including the claims to be released), information about Plaintiffs' motion for attorneys' fees and reimbursement expenses and the binding effect of the judgment.[96] The Notice also will provide specifics on the date, time and place of the Fairness Hearing and set

---

[94] *Id.* ¶¶ 18-22.

[95] *Prudential*, 148 F.3d at 328. *See also Halley v. Honeywell Int'l, Inc.*, 2016 WL 1682943, at *17 (D.N.J. Apr. 26, 2016) (The notice should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections") (quoting *Mullane v. Central Hanover Bank &Tr. Co.*, 339 U.S. 306, 314 (1950)); *see also* Miller Decl. ¶ 5.

[96] *See* Fed. R. Civ. P. 23(c)(2)(B).

forth the procedures, as well as deadlines, for: (i) requesting exclusion from the Class; (ii) entering an appearance; (iii) objecting to the settlement, the Plan of Distribution and/or the motion for attorneys' fees and reimbursement of expenses; and (iv) submitting a Claim Form.[97] The Summary Notice will summarize the above information and advise potential Settlement Class Members on how to obtain the more-detailed Notice.[98] This type of notice program is often used in class action cases.[99] The proposed notice plan meets the requirements of Rule 23, satisfies due process, and will fairly apprise potential Settlement Class Members of the existence of the settlement and their options in connection therewith.

Lastly, the Court should approve AB Data as Notice and Settlement Administrator. AB Data has served in this role in connection with numerous class actions in this Circuit and across the nation and has the experience and resources necessary to fulfill the role here.[100]

Accordingly, Plaintiffs respectfully submit that the proposed notice plan is adequate and should be approved by the Court.[101]

---

[97] *See id.*

[98] Miller Decl. ¶ 13.

[99] *Id.* ¶ 7.

[100] *Id.* ¶ 2.

[101] The Class Action Fairness Act, 28 U.S.C. § 1715, requires notice of the proposed Settlement to be served on appropriate State and Federal officials.

### 4.      The Proposed Allocation Plan is Reasonable.

An allocation plan is fair and reasonable as long as it has a "reasonable, rational basis."[102]  Because mathematical precision is impossible in calculating claims for a large class, courts recognize that "the adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information."[103] Here, the cash distribution will be made as follows: (1) for Humalog and Basaglar insulin users, they will receive distributions paid in proportion to their alleged overcharges as measured by Dr. Rosenthal's economic analysis; and (2) for Humulin users, they will receive distributions based on their overall payments during the class period on a *pro rata* basis.

### 5.      The Court should set a Fairness Hearing Schedule.

The last step in the settlement approval process is the fairness hearing, when the Court may hear all evidence and argument necessary to evaluate final approval of the settlement, including any objections or other responses by Settlement Class Members.  Plaintiffs respectfully propose the following schedule. The proposed schedule revolves around the date the Court enters the Preliminary Approval Order

---

Pursuant to the Settlement Agreement, Lilly will provide such notice.

[102] *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002).

[103] *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997).

and the date of the Fairness Hearing—which Plaintiffs request be _____ days after the anticipated service of the CAFA notice by Lilly.

| EVENT | DAYS FROM PRELIMINARY APPROVAL |
|---|---|
| Class Counsel to subpoena third-parties for data necessary to notify Settlement Class Members | 10 Days |
| Notice Program for Class Action Settlement to commence and Settlement Website to be Published | 30 Days |
| Notice Program for Class Action Settlement to close | 120 Days |
| Class Counsel to file motion for award of attorneys' fees, expenses, and service award. | 120 Days |
| Opt-Out and Objection Deadline | 135 Days |
| Class Counsel to file motion in support of final approval and reply brief in support of attorneys' fees, expenses, and service awards | 150 Days |
| Deadline to serve any reply brief in support of motion for final approval | 165 Days |
| Fairness Hearing | 180 Days |

## IV.   CONCLUSION

For all these reasons, Plaintiffs respectfully request that the Court enter the proposed Preliminary Approval Order that will (1) grant preliminary approval; (2)

provisionally certify the settlement class; (3) appoint Plaintiffs as class representatives for the settlement class; (4) appoint Steve Berman of Hagens Berman Sobol Shapiro LLP and James Cecchi of Carella Byrne Cecchi Olstein Brody & Agnello, P.C. as Class Counsel; (5) approve AB Data as notice and settlement administrator; (6) approve the form and content of notice to the settlement class; and (7) schedule a fairness hearing to consider final approval of the settlement and related matters.

DATED: May 26, 2023

Carella, Byrne, Cecchi,
Olstein, Brody, & Agnello, P.C.

*/s/ James E. Cecchi*
James E. Cecchi
Lindsey H. Taylor
Donald A. Ecklund
Kevin Cooper
5 Becker Farm Road
Roseland, NJ 07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744
jcecchi@carellabyrne.com
ltaylor@carellabyrne.com
decklund@carellabyrne.com
kcooper@carellabyrne.com


Hagens Berman Sobol Shapiro LLP

*/s/ Steve W. Berman*
Steve W. Berman
1301 2nd Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Thomas M. Sobol
Hannah W. Brennan
HAGENS BERMAN SOBOL SHAPIRO LLP
1 Faneuil Hall Sq.
5th Floor
Boston, MA 02109
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

tom@hbsslaw.com
hannahb@hbsslaw.com

Mark T. Vazquez
HAGENS BERMAN SOBOL SHAPIRO LLP
455 North Cityfront Plaza Drive
Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
Facsimile: (708) 628-4950
markv@hbsslaw.com

*Interim Co-Lead Counsel*

Joseph H. Meltzer
Ethan Barlieb
Lisa Lamb Port
Lauren McGinley
KESSLER TOPAZ MELTZER & CHECK, LLP
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
jmeltzer@ktmc.com
ebarlieb@ktmc.com
llambport@ktmc.com
lmcginley@ktmc.com

Paul F. Novak
Diana Gjonaj
Gregory Stamatopoulos
WEITZ & LUXENBERG
The Fisher Building
3011 West Grand Boulevard, 24th Floor
Detroit, MI 48202
Telephone: (313) 800-4170
Facsimile: (646) 293-7992
pnovak@weitzlux.com

dgjonaj@weitzlux.com
gstamatopoulos@weitzlux.com

Ellen Relkin
WEITZ & LUXENBERG
220 Lake Drive East, Suite 210
Cherry Hill, NJ 08002
Telephone: (212) 558-5500
Facsimile: (212) 344-5461
ERelkin@weitzlux.com

Lynn Lincoln Sarko
Derek W. Loeser
Juli Farris
Gabe Verdugo
KELLER ROHRBACK LLP
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone: (206) 623-1900
Facsimile: (206) 623-3384
lsarko@kellerrohrback.com
dloeser@kellerrohrback.com
jfarris@kellerrohrback.com
gverdugo@kellerrohrback.com

Nyran Rose Rasche
CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP
150 S. Wacker Drive, Suite 3000
Chicago, IL 60601
Telephone: (312) 782-4880
Facsimile: (312) 782-4485
nrasche@caffertyclobes.com

Linda P. Nussbaum
NUSSBAUM LAW GROUP, P.C.
1211 Avenue of the Americas, 40th Floor
New York, NY 10036-8718
Telephone: (917) 438-9102

lnussbaum@nussbaumpc.com

Michael Criden
Lindsey C. Grossman
CRIDEN & LOVE, P.A.
7301 S.W. 57th Court, Suite 515
South Miami, FL 33143
Telephone: (305) 357-9000
Facsimile: (305) 357-9050
mcriden@Cridenlove.com
lgrossman@cridenlove.com

Stephen H. Weil
LOEVY & LOEVY
311 N. Aberdeen
Chicago, IL 60607
Telephone: (312) 243-5900
Facsimile: (312) 243-5902
weil@loevy.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on May 26, 2023, I caused the foregoing to be served on ALL

DEFENSE COUNSEL OF RECORD through email.

/s/ James E. Cecchi
James E. Cecchi