# Exhibit 1

# SETTLEMENT AGREEMENT

**NOW, THEREFORE**, without any admission or concession by Plaintiffs or Plaintiffs' Class Counsel of any lack of merit to their allegations and claims, and without any admission or concession by Eli Lilly and Company ("Lilly") of any liability or wrongdoing, or lack of merit in its defenses, and without acknowledging that class treatment of Plaintiffs' claims is appropriate for trial purposes, in consideration of the mutual covenants and terms contained below, Plaintiffs, Plaintiffs' Class Counsel on behalf of Plaintiffs and the Settlement Class, and Lilly agree as follows:

## PROCEDURAL HISTORY

On February 2, 2017, Plaintiffs filed this lawsuit against Lilly, Novo Nordisk Inc. ("Novo"), and Sanofi-Aventis U.S. LLC ("Sanofi," together with Lilly and Novo, "Defendants") in the United States District Court for the District of New Jersey, raising allegations related to Defendants' sale of, pricing of, rebates paid for, and contracting for insulin products.  After six years of highly contested litigation, and settlement efforts facilitated by mediator Hon. Joseph A. Dickson, U.S.M.J. (Ret.), Plaintiffs and Lilly have reached this agreement to resolve Plaintiffs' claims.  This Settlement has been preceded by multiple rounds of motion to dismiss briefing, three amended complaints, extensive discovery (including over 60 depositions of Plaintiffs and Defendants' employees), discovery motion practice overseen by Special Master Dennis M. Cavanaugh, U.S.D.J. (Ret.), and briefing on class certification and related expert admissibility issues.  Throughout their pleadings, Plaintiffs sought, among other relief, injunctive relief focused on Defendants' prices for their insulin products.  This Settlement provides cash and forward-looking relief for Class Members and will, if finally approved, resolve Plaintiffs' claims against Lilly.

# I.    DEFINITIONS

As used in this Agreement (as defined below) and its exhibits, which exhibits are integral to this Agreement and are incorporated by reference in their entirety,[1] the terms below have the following meanings:

1.      "Action" means *In re Insulin Pricing Litigation*, Case No. 2:17-cv-0699 (D.N.J.).

2.      "Affordability Solutions" means Lilly's Insulin Value Program, which allows anyone who is a U.S. resident, over 18 years of age, and not enrolled in a government health insurance program to purchase their monthly prescription of a Lilly Insulin Product for no more than $35 out of pocket, as well as any equivalent Lilly affordability initiative that allows consumers to purchase their monthly prescription of a Lilly Insulin Product for no more than $35 out of pocket.  For the avoidance of doubt, "Affordability Solutions" for purposes of this Agreement shall only apply to the Lilly Insulin Products defined in Paragraph 13.

3.      "Agreement," "Settlement," or "Settlement Agreement" means this settlement agreement and the exhibits attached or incorporated, which are integral to this Agreement, including any amendments and any exhibits to such amendments.

4.      "Attorneys' Fees and Expenses" means the fees and expenses awarded to Plaintiffs' Class Counsel as set forth in Section VIII, including fees and expenses to be allocated among any other plaintiffs' counsel who seek a portion thereof, pursuant to the provisions in Section VIII.

5.      "Eligible Settlement Claimant" means a Settlement Class Member who is ineligible for Forward-Looking Settlement Consideration.  For the avoidance of doubt, any Settlement Class

---

[1] Exhibits B – E of the Declaration of Eric Miller shall be deemed Exhibits B – E to this Agreement, and are incorporated by reference in their entirety as if attached hereto.

Exhibits 2 – 4 of the Joint Declaration of James E. Cecchi and Steve W. Berman in Support of Plaintiffs' Motion for Preliminary Approval of Settlement shall be deemed Exhibits 2 -4 of this Agreement, and are incorporated by reference in their entirety as if attached hereto.

Member who is not currently using or is otherwise no longer able to use a Lilly Insulin Product by the first day of the Settlement Claim Period shall be considered ineligible for the Forward-Looking Settlement Consideration.

6.     "Fairness Hearing" means the hearing to be held pursuant to Fed. R. Civ. P. 23(e) for the purposes of the Court determining whether to approve this Agreement as fair, reasonable, and adequate and to approve and enter the Final Approval Order and Final Judgment.

7.     "Final Approval Order" means an order entered by the Court, approving the motion for final approval of the Settlement Agreement, as described in Section X of this Agreement, which is substantially in the form attached as Exhibit 3.

8.     "Final Effective Date" means the latest date on which the Final Approval Order approving this Agreement and the Final Judgment become final.  For purposes of this Agreement:

   a.     if no appeal has been taken from the Final Approval Order and/or Final Judgment, then "Final Effective Date" means the date on which the time to appeal therefrom has expired;

   b.     if any appeal has been taken from the Final Approval Order and/or Final Judgment, then "Final Effective Date" means the date on which all appeals from it, including, but not limited to, petitions for rehearing or reargument, petitions for rehearing en banc, and petitions for certiorari or any other form of review, have been finally disposed of in a manner that affirms the Final Approval Order or Final Judgment in all respects; or

   c.     if Plaintiffs' Class Counsel and Lilly all agree in writing, then the "Final Effective Date" can occur on any other agreed date; provided, however, that

pursuant to the direction of the Court, the Court must issue an order approving any such date agreed upon by the Parties.

9.      "Final Judgment" means the Court's final judgment as described in Section X of this Agreement.

10.     "Forward-Looking Settlement Consideration" means the settlement consideration described in Paragraph 43 of this Agreement.

11.     "Health Coverage" means any form of coverage provided by a commercial health insurer, health maintenance organization, or employer-sponsored health plan, or other health coverage provided by commercial or private payers or by any state or federal governmental program.

12.     "Incentive Award" means an amount to be distributed to each named plaintiff in Plaintiffs' Counsel's discretion up to a maximum of $5,000, as described in Section IX of this Agreement.

13.     "Lilly Insulin Product" means those Lilly insulin products marketed in Kwikpen, cartridge, or vial presentations in the United States under the brands Humalog, Humulin, or Basaglar.  For the avoidance of doubt, nothing in this Agreement obligates Lilly to continue to sell or market any particular product.

14.     "Lilly's Counsel" means Kirkland & Ellis LLP and Reed Smith LLP.

15.     "Long Form Notice" means the Long Form Notice substantially in the form as Exhibit B.

16.     "Opt-Outs" means all Persons who are Eligible Settlement Claimants that have submitted timely requests for exclusion in conformity with the procedural and substantive requirements of this Agreement, and all applicable orders of the Court, prior to the Opt-Out

Deadline, and who after that do not revoke such request for exclusion before entry of the Final Judgment.

17.     "Opt-Out Deadline" means the date the Court orders as the deadline for Persons to request to become an Opt-Out, which date the Parties shall propose to be 135 days after the Preliminary Approval Order.

18.     "Parties" means Plaintiffs, on behalf of themselves and the Settlement Class, and Lilly, collectively, as each of those terms is defined in this Agreement.

19.     "Person" or "Persons" means an individual person, acting either on their own behalf or on behalf of a family member or dependent.

20.     "Plaintiffs" refers to the named plaintiffs in this Action who purchased a Lilly Insulin Product—Carole Andrew, Francis Barnett, Tyler Campbell, Sheila Cooney, Lynn Davidson, Scott Dercks, Donald Douthit, Traci Gerber, Deanna Grimm, David Hernandez, Barry Hunsinger, Samantha Jensen, Barbara Johnson, Jake Knaack, Richard Knauss, Angela Kritselis, Susan Landis, Adam Levett, Mary Maberry, Jeanne MacNitt, Clayton McCook, Brian Phair, Lauren Robb, Jonathan Rollins, Robyn Rushing, Marie Saffran, Richard Sanders, Tremayne Sirmons, Laura Stark, Bret Stewart, and Molly Thompson—and any counsel, experts, or third-parties acting on their behalf to prosecute, settle, and resolve this Action.

21.     "Plaintiffs' Class Counsel" means the court-appointed interim co-lead counsel for Plaintiffs in the Action, who are: James E. Cecchi of Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C. and Steve W. Berman of Hagens Berman Sobol Shapiro LLP.

22.     "Preliminary Approval Order" means an order entered by the Court preliminarily approving the Settlement as described in Section X of this Agreement, which is to be substantially in the form attached as Exhibit 2.

23.     "Released Party" or "Released Parties" means Lilly and each of its past, present, and future officers, directors, agents, employees, servants, associates, spouses, representatives, subsidiaries, affiliated companies, parent companies, joint ventures and joint venturers, partnerships and partners, members, stockholders, shareholders, bondholders, unitholders, beneficiaries, trustees, insurers, reinsurers, divisions, agents, attorneys, administrators, advisors, predecessors, successors, heirs, and assigns.  The Releasing Party expressly acknowledges that each of the foregoing is included as a Released Party even though not identified by name herein.

24.     "Releasing Parties" or "Releasing Party" means the Settlement Class, Plaintiffs, and each Settlement Class Member, on behalf of themselves and their heirs, beneficiaries, estates, executors, administrators, representatives, agents, counsel, insurers, reinsurers, subsidiaries, corporate parents, predecessors, successors, indemnitors, subrogees, plans, payors, sponsors, and assigns, and any legal, juridical, elected or appointed official, or natural person or entity who may claim by, through, under, or on behalf of them.

25.     "Settlement Administrator" means the third-party agent who must be agreed to by Lilly and Plaintiffs' Class Counsel as a condition precedent to appointment by the Court, and who shall then be approved and appointed by the Court to implement the Settlement Class Notice; receive, process, and maintain requests of Settlement Class Members to opt out of the Settlement and become an Opt-Out; and handle all other aspects of settlement administration to implement the requirements of this Agreement as agreed by Plaintiffs' Class Counsel and Lilly.  Lilly and Plaintiffs' Class Counsel agree that A.B. Data Class Action Administration shall serve as Settlement Administrator, subject to approval by the Court.

- 6 -

26.     "Settlement Claim" means the claim of an Eligible Settlement Claimant, or Eligible Settlement Claimant's representative, timely submitted on a Settlement Claim Form as provided in this Agreement.

27.     "Settlement Claimant" means an Eligible Settlement Claimant who has submitted a Settlement Claim using the Settlement Claim Form.

28.     "Settlement Claim Form" means the document, in substantially the same form as Exhibit E, to be completed by an Eligible Settlement Claimant in order to make a Settlement Claim under this Settlement.

29.     "Settlement Claim Period" means the time when an Eligible Settlement Claimant may submit a Settlement Claim Form for review to the Settlement Administrator.  The Settlement Claim Period shall begin on the date that the Settlement Class Notice commences, and the Settlement Claim Period shall end 30 days after entry of the Final Approval Order.  The Settlement Claim Period shall be specified in the Summary Settlement Notice, Short Form Notice, and Long Form Notice, and on the Settlement website.

30.     "Settlement Class" means, for settlement purposes only, all Persons in the United States who, during the Settlement Class Period, paid any portion of the purchase price for any Lilly Insulin Product—for themselves or on behalf of any family member or dependent—at a price calculated by reference to a list price, Average Wholesale Price ("AWP"), and/or Wholesale Acquisition Cost or Price ("WAC") for any purpose other than resale, no matter how that Person paid for the Lilly Insulin Product.  For purposes of this Settlement Agreement, a price is calculated by reference to a list price, AWP, and/or WAC if the prescription for a Lilly Insulin Product (a) was not a covered benefit under Health Coverage, was not processed through any applicable Health Coverage, or was otherwise purchased by a Person without Health Coverage; (b) was a covered

benefit under Health Coverage but the Person was required to pay a portion in coinsurance; (c) was purchased during the deductible phase of any Health Coverage; or (d) was purchased by a Medicare Part D patient, including during any deductible or coverage gap phase or when the Person paid coinsurance. For the avoidance of doubt, if a Person purchased a Lilly Insulin Product on at least one occasion at a price calculated by reference to a list price, AWP, and/or WAC, as defined in this paragraph, that Person shall be a Settlement Class Member, even if on another occasion that Person purchased or received a Lilly Insulin Product that was not paid at a price calculated by reference to a list price, AWP, and/or WAC. Excluded from the Settlement Class are (a) the Court and each of their personnel and the judicial officers presiding over the Action and members of their immediate family and staffs; (b) all counsel (and their law firms) representing Plaintiffs in the Action, including Plaintiffs' Class Counsel and members of their immediate family; (c) any Person who purchased Lilly Insulin Products exclusively through Medicaid; and (d) all Persons who are Opt-Outs.

31. "Settlement Class Member" means a Person who is part of the Settlement Class.

32. "Settlement Class Members' Release" means the releases, waivers, and covenants not to sue set forth in Section VI of this Agreement and in the Final Approval Order and Final Judgment.

33. "Settlement Class Notice" means the notice program described in Section III.

34. "Settlement Class Period" means January 1, 2009, to the date of entry of the Final Approval Order.

35. "Settlement Fund" means the settlement consideration described in Paragraphs 44-45 of this Agreement.

36.     "Settlement Implementation Expenses" means all costs, fees, and expenses for implementation and administration of the Settlement and Class Notice, including, but not limited to, any purchase or subpoena of claims data, costs for administering the Settlement Class Notice to Settlement Class Members, distributing payments to Eligible Settlement Claimants, and the costs, fees, and expenses for the Settlement Administrator, as fully described and set forth in Paragraph 44 of this Agreement.

37.     "Short Form Notice" means the Short Form Notice substantially in the form as Exhibit C.

38.     "Summary Settlement Notice" means the publication notice which is to be substantially in the form as Exhibit D.

39.     "Transactional Data" means any transaction-level sales and claims data maintained by pharmacy benefit managers (PBMs), retail pharmacies, or other third-parties that can be subpoenaed and used to identify transactions in which Settlement Class Members purchased Lilly Insulin Products.

40.     Other capitalized terms used in this Agreement but not defined in this Section I shall have the meanings ascribed to them elsewhere in this Agreement.

41.     The terms "he or she," "his or her," and "their" include "it" or "its" where applicable.

## II.     SETTLEMENT BENEFITS

### A.     <u>Benefits Provided to Settlement Class Members</u>

42.     In consideration for the dismissal with prejudice of Lilly from the Action, as provided for and agreed to in this Agreement, and for the full and complete Settlement Class Members' Release, the Final Approval Order, and the Final Judgment and other terms and

conditions provided below, Lilly agrees to provide to the Settlement Class the benefits set forth in this Section II.

43.     **Forward-Looking Settlement Consideration** – Lilly shall agree to continue to make its Affordability Solutions available to residents in the United States for four years from the Final Effective Date ("Forward-Looking Settlement Consideration").  For the avoidance of doubt, Lilly has the discretion to modify the terms of its Affordability Solutions, as long as it continues to offer an affordability solution providing that anyone who is a U.S. resident, over 18 years of age, and not enrolled in a government health insurance program can purchase their monthly prescription of any Lilly Insulin Product currently marketed in the United States as of the date of the execution of this Settlement Agreement (or that of any minor dependents) for no more than $35 out of pocket.  Lilly is not required to take any action to further reduce the out-of-pocket cost of Lilly Insulin Products below $35.

44.     **Settlement Fund for Settlement Class Members Ineligible for Forward Looking Settlement Consideration –** Lilly shall provide in an escrow account a total of Thirteen Million Five Hundred Thousand Dollars ($13,500,000), to be deposited as specified in Paragraph 45, which shall be used by the Settlement Administrator to pay (i) all payments to Eligible Settlement Claimants as set forth in Paragraph 46; (ii) Settlement Implementation Expenses, including, but not limited to, the purchase or subpoena of Transactional Data from any third party for use in implementation of the Settlement; costs for mailings by the Settlement Administrator and all other Settlement Class Notice costs; the fee for the Settlement Administrator and its staff; and any other costs, expenses, or fees in connection with the implementation or administration of this Settlement; (iii) Attorneys' Fees and Expenses as set forth in Section VIII; and (iv) Incentive Awards, as set forth in Section IX.

45. **Payments from the Settlement Fund** – All payments for the Settlement come from the fund described in Paragraph 44 of this Agreement. Within 10 business days of entry of the Preliminary Approval Order, Lilly shall deposit Two Million Dollars ($2,000,000) into the Settlement Fund which shall be utilized to fund Settlement Implementation Expenses as set forth in Paragraph 44. Within 10 business days of the Final Effective Date, Lilly shall deposit the remaining Eleven Million Five Hundred Thousand Dollars ($11,500,000) into the Settlement Fund. In no circumstance shall the total of all amounts paid by Lilly to the Settlement Administrator, Plaintiffs' Class Counsel, and Settlement Class Members (including Incentive Awards) exceed Thirteen Million Five Hundred Thousand Dollars ($13,500,000). To the extent there are any unclaimed funds in the Settlement Fund following the payments made pursuant to Paragraph 44, the Parties will agree on an appropriate *cy pres*.

46. **Payments to Eligible Settlement Claimants –** If eligible, a Settlement Claimant will receive a cash payment to be disbursed from the Settlement Fund by the Settlement Administrator.  Settlement Claimants shall be eligible to receive a cash payment after the Court enters the Final Approval Order and any appeals are resolved.  Eligible Settlement Claimants can receive cash payments based on their purchases of Lilly Insulin Products during the Settlement Class Period to be calculated based on a formula set by Plaintiffs and the approved plan of allocation.  If the total value of all approved, timely claims submitted to the Settlement Administrator, in addition to Settlement Implementation Expenses, Incentive Awards, and Attorneys' Fees and Expenses, would exceed Thirteen Million Five Hundred Thousand Dollars ($13,500,000), the cash payments will be allocated to Settlement Claimants *pro rata* based on: (1) the amounts that they paid out-of-pocket for Lilly Insulin Products during the Settlement Class Period; and (2) the total value of all approved, timely claims submitted to the Settlement

Administrator.  In no circumstance shall the total of all amounts paid by Lilly to the Settlement

Administrator, Plaintiffs' Class Counsel, and Settlement Class Members (including Incentive

Awards) exceed Thirteen Million Five Hundred Thousand Dollars ($13,500,000).  If the total value

of all approved, timely claims submitted to the Settlement Administrator, is less than the remainder

of the funds after subtracting Settlement Implementation Expenses, Incentive Awards, and

Attorneys' Fees and Expenses, then the cash payments to each Settlement Claimant will be

increased pro rata, but in no event shall any payment to a Settlement Claimant increase by more

than three times.

47.     For the avoidance of doubt, to be eligible for a cash payment from the Settlement

Fund, a Settlement Class Member must be ineligible for Forward-Looking Settlement

Consideration, as defined in Paragraphs 5 and 43.

48.     A Settlement Class Member's claim for relief under this Agreement does not expire

by their death. Any Settlement Class Member whose death occurs any time before or during the

Settlement Claim Period will be considered ineligible for Forward-Looking Settlement

Consideration, and their surviving spouse or, if a minor, their surviving parent(s) or legal

guardian(s), may submit a claim for the cash payment that the Settlement Class Member would

have otherwise been eligible to receive from the Settlement Fund.

**B.**     **Settlement Claim Form Submission and Review**

49.     For a Settlement Class Member to become a Settlement Claimant and receive a

Settlement payment pursuant to Paragraph 46, that Settlement Class Member must submit a timely

Settlement Claim during the Settlement Claim Period, and the Settlement Administrator shall

review and evaluate the Settlement Claim. Persons excluded from the Settlement Class definition

set forth in Paragraph 30 shall not qualify for payment from the Settlement Fund.

50.     The process for submitting a Settlement Claim is designed to be as simple and convenient as possible, consistent with the integrity of the Settlement.  The Settlement Claim Form shall be substantially the same as Exhibit E.  The Settlement Claim Form will be available on the Settlement website and can be submitted electronically.

51.     Most Settlement Claims will be verifiable through the Transactional Data without requiring the Eligible Settlement Claimant to submit documentation. In instances where the Settlement Class Member seeks to recover for a purchase not reflected in the Transactional Data, the Settlement Claim Form shall advise the Settlement Class Member that the Settlement Administrator has the right to request: (a) verification of purchase of a Lilly Insulin Product; and/or (b) attestation under penalty of perjury that the Settlement Class Member's provided documentation genuinely reflects a transaction whereby the Settlement Class Member purchased a Lilly Insulin Product during the Settlement Class Period at a price calculated by reference to a list price, AWP, and/or WAC (as defined in Paragraph 30) during the Settlement Class Period.  If the Settlement Claimant does not timely comply, cannot timely produce documents to substantiate or verify the information on the Settlement Claim Form, or if the Settlement Claim is otherwise not approved for any reason set forth in this Agreement, the Settlement Claim shall be disqualified. Unless the Settlement Administrator decides otherwise, a Settlement Claim submitted or postmarked after the Settlement Claim Period concludes will be rejected by the Settlement Administrator as untimely and cannot qualify for a Settlement payment. The decision of the Settlement Administrator on whether a Settlement Claimant is eligible to receive a Settlement payment, and the amount of the Settlement payment to be paid to a Settlement Claimant, shall be final and binding on the Settlement Claimant and all Parties; there shall be no right of appeal to

the Court or any other court for Settlement Claimants or any other Person of any such decision by the Settlement Administrator.

52.     The Settlement Administrator shall not begin to review and evaluate Settlement Claims for eligibility until after the Settlement Claim Period.  The Settlement Administrator shall not pay any Settlement Claims unless and until the Final Effective Date occurs and the Settlement Administrator notifies the Parties of (i) the number of timely, eligible Settlement Claims submitted to the Settlement Administrator; (ii) the total amount of money sought in the timely, eligible Settlement Claims; and (iii) final costs of the Settlement Implementation Expenses.  As stated in Paragraph 46, the cash payment made to each Settlement Claimant shall be reduced *pro rata* if the total amount necessary to pay the Settlement Claimants plus Settlement Implementation Expenses, Plaintiffs' Attorneys' Fees and Expenses, and Incentive Awards would exceed Thirteen Million Five Hundred Thousand U.S. Dollars ($13,500,000).  In no circumstance shall the total of all amounts paid by Lilly to the Settlement Administrator, Plaintiffs' Class Counsel, and Settlement Class Members (including Incentive Awards) exceed Thirteen Million Five Hundred Thousand Dollars ($13,500,000).  Settlement Claims approved by the Settlement Administrator shall be paid by the Settlement Administrator in accordance with the final determinations made by the Settlement Administrator in accordance with the terms of this Agreement.

### III.     NOTICE TO THE CLASS

53.     Immediately following preliminary approval of this Agreement, Plaintiffs will serve subpoenas on the six largest PBMs and seven largest national retail pharmacy chains in the United States to obtain Transactional Data.  From this Transactional Data, Plaintiffs will identify any potential Settlement Class Members.

54.     Once this process has been completed, Plaintiffs will provide all potential Settlement Class Members' information to the Settlement Administrator.  The Settlement

Administrator shall then provide Settlement Class Notice of the Settlement Agreement to Settlement Class Members, using a combination of direct notice and constructive notice.

55.     Direct notice will be provided to any potential Settlement Class Members who can be identified in the Transactional Data.  For those Settlement Class Members for whom an email address is identifiable in the Transactional Data, the Settlement Administrator will provide direct notice by emailing the Short Form Notice to the potential Settlement Class Member's email address.  For all other Settlement Class Members identified in the Transactional Data, the Settlement Administrator will send the Short Form Notice using First-Class U.S. Mail to the physical mailing address identified in the Transactional Data for that prospective Settlement Class Member.

56.     To supplement direct notice efforts, the Settlement Administrator will also provide constructive notice using targeted digital banner and newsfeed advertisements placed on websites and applications, and by a news release disseminated via PR Newswire's US1 distribution list.

57.     The Settlement Administrator will also implement and maintain a case-specific website for this matter.  The website address will appear on the Short-Form Notice and Long-Form Notice, and it will be hyperlinked in any email to Settlement Claimants or digital banner ad.  The website will provide, among other things, a summary of the case and Settlement Class Member rights and options, relevant pleadings, important dates, and any pertinent updates concerning the Action.

## IV.     REQUESTS TO BECOME OPT-OUTS

58.     Any potential Settlement Class Member who is an Eligible Settlement Claimant but wishes to become an Opt-Out must email or mail a written, hand-signed request to become an Opt-Out to the Settlement Administrator at the address provided in the Long Form Notice, postmarked by the Opt-Out Deadline, specifying that such Person wants to become an Opt-Out; the dates of

purchase of a Lilly Insulin Product; the name and other identifying information of the Lilly Insulin Product; whether opting out on behalf of themselves (whether for purchase of Lilly Insulin Products for themselves or for a family member or dependent) or an estate; and the Person's current address; and otherwise complying with the terms stated in the Long Form Notice and Preliminary Approval Order. The Settlement Administrator shall provide to Plaintiffs' Class Counsel and Lilly a weekly list of the Opt-Outs categorized by the Lilly Insulin Product. A list reflecting all requests to become an Opt-Out shall be filed with the Court by the Settlement Administrator no later than 30 days before the Fairness Hearing. If a potential Settlement Class Member files a request to become an Opt-Out, such Person may not object to the Settlement under Section V. Potential Settlement Class Members who exercise the right to opt out must do so for all claims that the potential Settlement Class Member possesses against Lilly.

59. Any potential Settlement Class Member who has submitted a timely and valid request to become an Opt-Out may revoke such request by filing written notice of such revocation with the Court at any time before entry of the Final Approval Order and Final Judgment.

60. Any potential Settlement Class Member who is a Settlement Claimant and does not file a timely written request to become an Opt-Out shall be bound by all subsequent proceedings, orders and judgments, including, but not limited to, the Settlement Class Members' Release as set forth in Section VI below, the Final Approval Order, and the Final Judgment, even if such Settlement Class Member has litigation pending or subsequently initiates or attempts to initiate litigation against any Released Party relating to the claims and transactions released under this Settlement.

61. The Parties have agreed to a confidential number of Opt-Outs and will provide this number to the Court in a document to be kept under seal by the Court pursuant to the Parties' joint

request until the Final Effective Date.  If the number of Opt-Outs is greater than the number agreed to by the Parties, then Lilly shall in its sole discretion have the absolute unilateral right (but not the obligation) to terminate the Settlement.  The number agreed to by the Parties shall be confidential and known only to Plaintiffs' Class Counsel and Lilly, and the Parties shall file a document identifying this agreed-upon number under seal with the Court.  If Lilly decides to terminate the Settlement pursuant to this provision, Lilly must notify Plaintiffs' Class Counsel of such termination no later than 5 days before the Fairness Hearing.

## V.  OBJECTIONS TO SETTLEMENT

62.  Any Settlement Class Member who has not filed a timely written request to become an Opt-Out and who wishes to object to the fairness, reasonableness, or adequacy of this Settlement or to the award of Attorneys' Fees and Expenses, must deliver to Plaintiffs' Class Counsel and Lilly, each as identified in the Settlement Class Notice, and file with the Court, on a date ordered by the Court, a written statement of the Settlement Class Member's objections.  Any such objection shall include the specific reason(s) for the objection, including any legal support the Settlement Class Member wishes to bring to the Court's attention, any evidence or other information the Settlement Class Member wishes to introduce in support of the objection, and a statement of whether the Settlement Class Member intends to appear and argue at the Fairness Hearing. Settlement Class Members may do so either on their own or through an attorney retained at their own expense.  The objection must include proof that the Person is a Settlement Class Member, including the Person's dates of purchase of a Lilly Insulin Product and the name and identifying information of the Lilly Insulin Product to which the objection applies and the Person's current address.

63.  Any Settlement Class Member who files and serves a written objection, as described in this Section V, may appear at the Fairness Hearing, either in person or through

personal counsel hired at the Settlement Class Member's expense, to speak in support of such objection. Settlement Class Members or their attorneys who intend to make an appearance at the Fairness Hearing must deliver a notice of intention to appear to Plaintiffs' Class Counsel and Lilly's Counsel, each as identified in the Settlement Class Notice, and file said notice with the Court on a date ordered by the Court.

64. Any Settlement Class Member who fails to comply with the provisions of this Section V shall waive and forfeit any and all rights such Settlement Class Member may have to appear separately and/or to object to the Settlement and shall be bound by all the terms of this Agreement and by all proceedings, orders, and judgments, including, but not limited to, the Settlement Class Members' Release, the Final Approval Order, and the Final Judgment.

65. Any Settlement Class Member who objects to the Settlement shall be entitled to all the benefits of the Settlement if this Agreement and the terms contained herein are approved, as long as the objecting Settlement Class Member complies with all requirements of this Agreement applicable to Settlement Class Members, including the timely submission of Settlement Claim Forms and other requirements herein.

## VI.     RELEASES, WAIVERS, AND COVENANTS NOT TO SUE

66. In consideration for the Settlement, effective automatically upon the entry of the Final Judgment, the Releasing Parties fully, finally, and forever release, relinquish, acquit, waive, discharge with prejudice, covenant not to sue, and hold harmless the Released Party from any and all causes of action, claims, demands, suits, arbitrations, mediations, petitions, liabilities, rights, and damages of any kind and/or type (including, but not limited to, compensatory, benefit-of-the-bargain, diminished value, lost time, lost earnings or other losses, unjust enrichment, out-of-pocket, illegal profits, injunctive or other equitable relief, exemplary, punitive, penalties, liens, restitution, disgorgement, expert and/or attorneys' fees or by multipliers), whether past, present,

or future, mature or not yet mature, existing now or arising in the future, whether or not concealed or hidden, developed or undeveloped, foreseen or unforeseen, known or unknown, suspected or unsuspected, contingent or noncontingent, derivative or direct, asserted or unasserted, liquidated or unliquidated, whether or not such claims were or could have been raised or asserted in the Action, whether based on federal, state or local law, statute, ordinance, regulation, code, contract, common law, antitrust law, RICO, consumer fraud, unfair business practices, fraudulent concealment, gross negligence, recklessness, willful misconduct, or any other source or theory, whether in law or in equity, that any of the Releasing Parties had, now has or have, or hereafter can, shall or may have, or could assert directly or indirectly in any forum against the Released Party, in each case, arising out of, due to, resulting from, connected with, or involving or relating in any way to, directly or indirectly, the subject matter of the Action or the Lilly Insulin Products, or that are, or could have been, defined, alleged, or described in the Third Amended Class Action Complaint, including, but not limited to, those relating to the manufacturing, distribution, marketing, advertising, pricing, or sale of the Lilly Insulin Products.  This includes, but is not limited to, claims for relief brought on behalf of the Releasing Parties by any other Person, entity, representative, or official.  The Releasing Parties shall not now or hereafter institute, maintain, prosecute, assert, and/or cooperate in the institution, commencement, filing, or prosecution of any suit, action, and/or proceeding, against the Released Party, either directly or indirectly, on their own behalf, on behalf of a class, or on behalf of any other Person, including a representative doing such on their behalf or in connection with their purchase of Lilly Insulin Products, with respect to the claims, causes of action and/or any other matters released through the Settlement Class Members' Release.  The Releasing Parties specifically acknowledge that the relief provided for in this Agreement is in compensation for, adequate consideration regarding, and discharges entirely,

any possible causes of action, claims, demands, suits, arbitrations, mediations, petitions, liabilities, rights, and damages of any kind and/or type related to conduct arising out of, due to, resulting from, connected with, or involving or relating in any way to, directly or indirectly, the subject matter of the Action, the Lilly Insulin Products, or that are, or could have been, defined, alleged or described in the Third Amended Class Action Complaint, including, but not limited to, those relating to or arising out of the manufacturing, distribution, marketing, advertising, pricing, or sale of the Lilly Insulin Products.  The relief provided for in this Agreement shall be the sole and exclusive remedy for or on behalf of all Releasing Parties with respect to any released claim, injury, and damage, as described in this Paragraph 66, and the Released Party shall not be subject to liability or expense of any kind with respect to any released claims brought by or on behalf of any Releasing Party other than as set forth in this Agreement.

67.     The Settlement Class, Plaintiffs, and Settlement Class Members expressly agree that the Settlement Class Members' Release is, will be, and may be raised as a complete defense to, and shall preclude any action or proceeding encompassed by, this Settlement Class Members' Release regardless of whether any Plaintiff or Settlement Class Member submits a Settlement Claim, has a Settlement Claim rejected by the Settlement Administrator, or receives any payment pursuant to this Settlement.

68.     Plaintiffs and the Settlement Class Members represent and warrant that they are the sole and exclusive owners of all claims that they are releasing under this Agreement.  Plaintiffs further acknowledge that they have not assigned, pledged, or in any way whatsoever sold, transferred, assigned, subrogated, or encumbered, whether through insurance, indemnification, or otherwise, any right, title, interest or claim arising out of or in any way whatsoever pertaining to the Action or the claims, causes of action, and/or any other matters released through the Settlement

Class Members' Release, including, without limitation, any claim for benefits, proceeds or value under the Action, and that Plaintiffs are unaware of any insurers, indemnitors, subrogees, or anyone other than themselves claiming any interest, in whole or in part, in the Action or the claims, causes of action, and/or any other matters released through the Settlement Class Members' Release or in any benefits, proceeds or values under the Action. Settlement Class Members submitting a Settlement Claim Form shall represent and warrant therein that they are the sole and exclusive owner of all claims that they personally are releasing under the Settlement and that they have not assigned, pledged, or in any way whatsoever sold, transferred, assigned, subrogated, or encumbered, whether through insurance, indemnification, or otherwise, any right, title, interest or claim arising out of or in any way whatsoever pertaining to the Action or the claims, causes of action, and/or any other matters released through the Settlement Class Members' Release, including without limitation, any claim for benefits, proceeds or value under the Action, and that such Settlement Class Member(s) are unaware of anyone other than themselves claiming any interest, in whole or in part, in the Action or the claims, causes of action, and/or any other matters released through the Settlement Class Members' Release or in any benefits, proceeds or values under the Action. If anyone purports to assert any right, title, interest, or claim that was assigned, pledged, or in any way whatsoever sold, transferred, assigned, subrogated, or encumbered, whether through insurance, indemnification, or otherwise, arising out of or in any way whatsoever pertaining to the Action or the claims, causes of action, and/or any other matters released through the Settlement Class Members' Release, the Settlement Class Members' Release shall apply to the right, title, interest, or claim, or any portion thereof, asserted.

69.     If a Releasing Party commences, files, initiates, or institutes any new legal action or other proceeding against a Released Party for any claims, demands, suits, arbitrations,

mediations, petitions, liabilities, causes of action, rights, or damages of any kind and/or type released through the Settlement Class Members' Release, as set forth in Paragraph 66, in any federal or state court, arbitral tribunal, or administrative or other forum, (a) such legal action or proceeding shall be dismissed with prejudice at the cost of the respective Releasing Party and respective Settlement Class Member, and (b) the Released Party shall be entitled to recover any and all reasonable related costs and expenses (including attorneys' fees) from such Releasing Party and such Settlement Class Member arising as a result of that Releasing Party's breach of their obligations under the Agreement and the Settlement Class Members' Release, provided that the Released Party provides written notice to the Releasing Party and Settlement Class Member of their alleged breach and an opportunity to cure the breach.

70.     In connection with this Agreement, the Settlement Class, Plaintiffs, and Settlement Class Members acknowledge that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those that they now know or believe to be true concerning the subject matter of the Action and/or the Settlement Class Members' Release herein.  Nevertheless, the intention of Plaintiffs' Class Counsel and Plaintiffs in entering into this Agreement on behalf of the Releasing Parties is that the Releasing Parties shall fully, finally and forever settle, release, discharge with prejudice, covenant not to sue, and hold harmless the Released Party from any and all claims, demands, suits, arbitrations, mediations, petitions, liabilities, causes of action, rights and damages of any kind and/or type relating thereto that exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action or proceeding), whether on their own behalf or through a representative, with respect to the subject matter of the Action or the Lilly Insulin Products, or that are, or could have been, defined, alleged, or described in the Third Amended Class Action Complaint.

- 22 -

71.     The Releasing Parties expressly waive, relinquish, release with prejudice, and covenant not to exercise, and shall be deemed to have waived, relinquished, released with prejudice, and covenanted not to exercise, any and all rights and/or claims that they may have under any law, code, statute, regulation, adjudication, quasi-adjudication, decision, administrative decision, common law principle, or any other theory or source, that would otherwise limit the effect of the Settlement Class Members' Release, including, but not limited to, any law that might limit a release to those claims or matters actually known or suspected to exist at the time of execution of the release.  Without limiting the foregoing sentence, Plaintiffs and Settlement Class Members expressly understand and acknowledge that all Releasing Parties will be deemed by the Final Approval Order and Final Judgment to acknowledge, waive, relinquish, release with prejudice, and covenant not to exercise the benefits of Section 1542 of the Civil Code of the State of California, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Releasing Parties expressly waive, relinquish, release with prejudice, and covenant not to exercise any and all rights and benefits that they may have under, or that may be conferred upon them by, the provisions of Section 1542 of the California Civil Code, or any other law of any state, jurisdiction, or territory that is similar, comparable, or equivalent to Section 1542.

72.     Without in any way limiting its scope, except to the extent otherwise specified in this Agreement, the Settlement Class Members' Release includes, by way of example and without limitation, a release of the Released Party by the Releasing Parties from any and all claims for attorneys' fees, costs, expert fees, or consultant fees, interest, or litigation fees, costs or any other

fees, costs, and/or disbursements incurred by any attorneys, Plaintiffs' Class Counsel, Plaintiffs, or Settlement Class Members who claim to have assisted in conferring the benefits under this Settlement upon the Settlement Class.

73.     Any and all benefits paid and/or provided by Lilly pursuant to this Agreement are in full, complete, and total satisfaction of all claims, demands, suits, arbitrations, mediations, petitions, liabilities, causes of action, rights, and damages of any kind and/or type described in Paragraph 66.  Such benefits are sufficient and adequate consideration for each and every term of the Settlement Class Members' Release, and the Settlement Class Members' Release shall be irrevocably binding upon the Settlement Class, all Plaintiffs, all Releasing Parties, and each and every Settlement Class Member who does not opt out of the Settlement Class.

74.     The Settlement Class Members' Release shall be effective with respect to all Releasing Parties, including Settlement Class Members who do not opt out, regardless of whether the Settlement Class Member submits a Settlement Claim, has a Settlement Claim rejected by the Settlement Administrator, files an objection, or receives any payment under this Agreement.

75.     Plaintiffs' Class Counsel acknowledge that they have conducted sufficient independent investigation and discovery to enter into this Agreement and that they execute this Agreement with authorization from Plaintiffs freely, voluntarily, and without being pressured or influenced by, or relying upon any statements, representations, promises, or inducements made by the Released Party or any person or entity representing the Released Party, other than as expressly set forth in this Agreement.

76.     Nothing in the Settlement Class Members' Release shall preclude any action to enforce the terms of the Agreement, including participation in any of the processes detailed herein, or claims arising out of, based upon, relating to, concerning, or in connection with the

interpretation or enforcement of the terms of the Settlement.  Nothing in the Final Approval Order and Final Judgment shall bar any action by any of the Parties to enforce or effectuate the terms of this Agreement, the Final Approval Order, and the Final Judgment.

77.     Plaintiffs, by and through Plaintiffs' Class Counsel, and Plaintiffs' Class Counsel hereby agree and acknowledge that the provisions of this Settlement Class Members' Release together constitute an essential and material term of the Agreement.  The Final Approval Order and Final Judgment will include this Settlement Class Members' Release and reflect the terms set forth in this Section VI.

## VII.   COURT JURISDICTION

78.     **Exclusive Court Jurisdiction and Ongoing Court Jurisdiction** – The Court, as will be set forth in the Final Approval Order and the Final Judgment, shall have and retain continuing, sole and exclusive jurisdiction over the Parties, the Settlement Class, and Settlement Class Members for purposes of administering and enforcing this Settlement, including (a) all issues relating to the scope, application and/or operation of the Settlement Class Members' Release, including jurisdiction over each Settlement Class Member; (b) over the administration and enforcement of this Agreement and distribution of its benefits to Settlement Class Members; (c) any dispute arising as to the action or election of any Party under Section XII; and (d) enforcement of the injunction under Rule 23(b)(2).  Any disputes or controversies arising out of or related to the administration or enforcement of the Agreement and the Settlement Class Members' Release shall be made by motion to the Court.  In addition, the Parties, the Settlement Class, and each Settlement Class Member are deemed to have submitted irrevocably to the exclusive jurisdiction of the Court for any suit, action, proceeding or dispute arising out of or relating to this Agreement. The terms of the Agreement shall be incorporated into the Final Approval Order and the Final Judgment of the Court dismissing with prejudice all matters covered by the Settlement Class

Members' Release, which shall allow that the Final Approval Order and Final Judgment serve as an enforceable injunction by the Court for purposes of the Court's continuing jurisdiction related to this Agreement.

79.    **Resolution of the Action** – Pursuant to the Final Judgment, all matters related to the Action pending in the Court as to Lilly shall be deemed automatically and conclusively settled pursuant to the terms of this Agreement, and the claims against Lilly shall be deemed dismissed with prejudice.

## VIII.   ATTORNEYS' FEES AND EXPENSES

80.    Plaintiffs' Class Counsel shall make, on behalf of all counsel seeking Attorneys' Fees and Expenses, an application to the Court, and subject to Court approval, for an award of Attorneys' Fees and Expenses in the Action, based upon the value of the Settlement Agreement in its entirety including the Forward-Looking Settlement Consideration and the Settlement Fund. This award by the Court of Attorneys' Fees and Expenses shall be the sole compensation paid for all attorneys who represent any Person asserting claims against Lilly in the Action.  In no event and under no circumstances shall Lilly pay any amount in Attorneys' Fees and Expenses outside of the funds paid to the Settlement Fund.  Attorneys' Fees and Expenses awarded by the Court shall be paid to Plaintiffs' Class Counsel by the Settlement Administrator, from the Settlement Fund, upon entry of the Court's Order granting the award of fees and expenses.  If the Final Approval Order and Final Judgment approving this Agreement do not become final for any reason, Plaintiffs' Class Counsel and any counsel who receives Attorneys' Fees and Expenses pursuant to this Agreement shall be required to return such Attorneys' Fees and Expenses to Lilly.

81.    The Settlement Class, Plaintiffs, and Plaintiffs' Class Counsel agree and covenant that, regardless of any orders, judgments, decisions, awards, or any other basis, they shall not claim, seek, attempt to recover, accept, execute on, or collect on any Attorneys' Fees and Expenses

from Lilly in excess of the balance of the Settlement Fund after the payment of eligible Settlement

Claims from Settlement Claimants and Settlement Implementation Expenses, and in no event shall

Attorneys' Fees and Expenses paid pursuant to this Settlement Agreement exceed Six Million

Dollars ($6,000,000).

82.     Lilly shall have no responsibility to make any payment to Plaintiffs' Class Counsel

or any other counsel arguing that it has conferred a benefit upon Plaintiffs, the Settlement Class,

or any Settlement Class Member other than the amount in Attorneys' Fees and Expenses awarded

by the Court, which amount shall not exceed Six Million Dollars ($6,000,000).  The Attorneys'

Fees and Expenses paid by Lilly, as provided for in this Agreement, shall be allocated by Plaintiffs'

Class Counsel among other plaintiffs' counsel who seek a portion of the Attorneys' Fees and

Expenses.

83.     The proceedings for the Court to determine the amount of Attorneys' Fees and

Expenses to award to Plaintiffs' Class Counsel or any other counsel and the Court's award of any

Attorneys' Fees and Expenses are to be considered by the Court separately from the Court's

consideration of the fairness, reasonableness, and adequacy of the Settlement.  The Attorneys'

Fees and Expenses awarded shall be set forth in a fee and expense award separate from the Final

Approval Order and the Final Judgment so that any appeal of one shall not constitute an appeal of

the other.  Any order or proceedings relating to the Attorneys' Fees and Expenses application, or

any appeal from any order related thereto, or reversal or modification thereof, will not operate to

terminate or cancel this Agreement, or affect or delay the Final Effective Date, except that in no

event and under no circumstances shall Lilly pay any amount in Attorneys' Fees and Expenses

greater than Six Million Dollars ($6,000,000).  Lilly reserves the right to challenge requested

Attorneys' Fees and Expenses to the extent the request is inconsistent with the Settlement

Agreement, including if the payment of Attorneys' Fees and Expenses plus eligible Settlement Claims from Settlement Claimants, Incentive Awards, and Settlement Implementation Expenses would total more than Thirteen Million Five Hundred Thousand Dollars ($13,500,000).

### IX.    NAMED PLAINTIFF INCENTIVE AWARDS

84.    Plaintiffs shall make an application to the Court to award each class representative who has purchased a Lilly Insulin Product—Carole Andrew, Francis Barnett, Tyler Campbell, Sheila Cooney, Lynn Davidson, Scott Dercks, Donald Douthit, Traci Gerber, Deanna Grimm, David Hernandez, Barry Hunsinger, Samantha Jensen, Barbara Johnson, Jake Knaack, Richard Knauss, Angela Kritselis, Susan Landis, Adam Levett, Mary Maberry, Jeanne MacNitt, Clayton McCook, Brian Phair, Lauren Robb, Jonathan Rollins, Robyn Rushing, Marie Saffran, Richard Sanders, Tremayne Sirmons, Laura Stark, Bret Stewart, and Molly Thompson—an Incentive Award in an amount in Plaintiffs' Class Counsel discretion, up to a maximum of $5,000.  Lilly agrees not to oppose any Incentive Award amount up to $5,000.

85.    Incentive Awards will be paid from the Settlement Fund and distributed upon instructions received from Plaintiffs' Class Counsel.

### X.    PRELIMINARY APPROVAL ORDER, FINAL APPROVAL ORDER, FINAL JUDGMENT, AND RELATED ORDERS

86.    The Parties shall seek and undertake all reasonable good faith efforts, subject to the conditions precedent set forth in this Agreement, to obtain from the Court the Preliminary Approval Order, the Final Approval Order, and the Final Judgment.

87.    **Preliminary Approval Order** – The Parties shall file a notice of a joint hearing before the Court, solely with respect to the Preliminary Approval Order, with such joint hearing to be held at the earliest practicable and available date after the Parties file motions in support of the Preliminary Approval Order.

88.     The Parties shall seek and undertake all reasonable good faith efforts to obtain from the Court, subject to the conditions precedent set forth herein, a Preliminary Approval Order in a form substantially similar to Exhibit 2.  The Preliminary Approval Order shall, among other things:

a.      Preliminarily certify a nationwide settlement-only class, approve Plaintiffs as class representatives, and appoint Plaintiffs' Class Counsel as counsel for the settlement-only class, pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3);

b.      Preliminarily approve the Settlement;

c.      Require the dissemination of the Settlement Class Notice and the taking of all necessary and appropriate steps to accomplish this task;

d.      Determine that the Settlement Class Notice complies with all legal requirements, including, but not limited to, the Due Process Clause of the United States Constitution;

e.      Schedule a date and time for a Fairness Hearing to determine whether the Settlement should be finally approved by the Court;

f.      Require Settlement Class Members who wish to exclude themselves to submit an appropriate and timely hand-signed written request to become an Opt-Out as directed in this Agreement and Long Form Notice, and require that a failure to do so shall bind those Settlement Class Members who remain in the Settlement Class;

g.      Require Settlement Class Members who wish to object to this Agreement to submit a written statement as directed in this Agreement and Long Form Notice, and so indicate if they shall appear in person at the Fairness Hearing;

h.      Require attorneys representing Settlement Class Members, at the Settlement Class Members' expense, to file a notice of appearance as directed in this Agreement and Long Form Notice;

i.      Issue a preliminary injunction of any and all challenges or other litigation by any Person, including Plaintiffs, all potential Settlement Class Members, and any parties in actions arising out of, in connection with, or related to the Agreement other than the litigation in the Court concerning final approval of this Settlement;

j.      Issue a stay of the Action as to Lilly and a preliminary injunction enjoining potential Settlement Class Members, pending the Court's determination of whether the Settlement should be given final approval, from litigating, pursuing, making, or proceeding with any claims arising out of, or in connection with, Lilly Insulin Products;

k.      Appoint the Settlement Administrator; and

l.      Issue any and all other related orders to effectuate the preliminary approval of the Agreement.

89.     **Final Approval Order and Final Judgment** – At or after the Fairness Hearing, the Parties shall seek and undertake all reasonable good faith efforts to obtain from the Court a Final Approval Order and Final Judgment in substantially similar form and content to the proposed Final Approval Order and the proposed Final Judgment to which the Parties shall agree in writing and jointly submit to the Court.  The Final Approval Order and the Final Judgment shall, among other things:

a.      Find that the Court has personal jurisdiction over all Plaintiffs, the Settlement Class, and all Settlement Class Members; that the Court has subject-matter jurisdiction over the claims asserted in the Third Amended Class Action Complaint and the Action; and that venue is proper;

b.      Finally approve the Agreement and Settlement, pursuant to Fed. R. Civ. P. 23;

c.      Finally certify the Settlement Class for settlement purposes only;

d.      Find that the Settlement Class Notice and the notice dissemination method complied with all laws, including, but not limited to, the Due Process Clause of the United States Constitution;

e.      Dismiss the Action as to Lilly with prejudice and without costs (except as provided for herein as to costs);

f.      Incorporate the Settlement Class Members' Release set forth in the Agreement and make the Settlement Class Members' Release effective as of the date of the Final Approval Order and Final Judgment;

g.      Issue a permanent injunction, including permanently enjoining any and all claims, demands, suits, arbitrations, mediations, petitions, liabilities, causes of actions, rights, and damages of any kind and/or type included in the Settlement Class Members' Release;

h.      Authorize the Parties to implement the terms of the Agreement;

i.      Expressly incorporate the terms of this Agreement and expressly provide that the Court retains continuing and exclusive jurisdiction over the Parties, the Settlement Class Members, this Agreement, the Action pending before

the Court, and the Final Approval Order and the Final Judgment (i) to administer and enforce the Agreement, (ii) for all matters relating to the Settlement and the Action pending before the Court, and (iii) for any other necessary purpose; and

j.      Issue related orders to effectuate the final approval of the Agreement and its implementation.

## XI.      REASONABLE EFFORTS TO EFFECTUATE THIS SETTLEMENT

90.      The Parties each agree to recommend approval of this Agreement and the Settlement by the Court.  They agree to undertake reasonable efforts, including all steps and efforts contemplated by this Agreement and any other steps and efforts that may be necessary and appropriate to obtain the Court's approval of this Settlement, and to carry out the terms of this Agreement, provided that this will not limit any express rights to terminate this Settlement that any Party may have.

91.      The Parties agree that the Court's authority to enforce this Agreement includes, but is not limited to, awarding monetary and/or injunctive relief and discretion to impose specific performance, sanctions or penalties, including imposition of any sanction up to and including contempt of court, pursuant to 28 U.S.C. § 636(e), against any Party that breaches or defaults on its obligations under this Agreement.  The Parties agree that the terms of this Agreement satisfy the requirements for injunctive relief and specific performance.

92.      In the event that any Party to this Agreement finds it necessary to bring an action or proceeding against another Party to this Agreement as a result of a breach or default hereunder or to enforce the terms and conditions hereof, the prevailing Party in such action or proceedings shall be paid all its reasonable attorneys' fees, costs and necessary disbursements incurred in connection with such action.

## XII.   MODIFICATION OR TERMINATION OF THIS AGREEMENT

93.     The terms and provisions of this Agreement may be amended, modified, or expanded by written agreement of the Parties and, if necessary, approval of the Court if the Final Approval Order and Final Judgment have been entered and the amendment or modification materially affects relief provided in the Final Approval Order or the Action; provided, however, that after entry of the Final Approval Order and Final Judgment, the Parties may by written agreement effect such amendments, modifications, or expansions of this Agreement and its implementing documents (including all exhibits hereto) without further notice to the Settlement Class or approval by the Court if such changes are consistent with the Court's Final Approval Order and Final Judgment and do not limit the rights of Settlement Class Members under this Agreement.

94.     This Agreement shall terminate at the discretion of either Lilly or the Plaintiffs, through Plaintiffs' Class Counsel, if (a) the Court declines to enter the Preliminary Approval Order in substantially the form attached hereto as Exhibit 2, or the Preliminary Approval Order is withdrawn, rescinded, reversed, vacated, or modified (in a manner such that the order is not substantially in the form attached hereto as Exhibit 2); (b) the Court does not enter the Final Approval Order and Final Judgment in substantially the form agreed to by the Parties in writing and submitted by them to the Court as the proposed Final Approval Order and proposed Final Judgment; (c) the Final Approval Order and Final Judgment are withdrawn, rescinded, reversed, vacated, or modified on appeal (in a manner such that the Final Approval Order and/or the Final Judgment are not substantially the form agreed to by the Parties in writing and submitted by them to the Court as the proposed Final Approval Order and Final Judgment); and/or (d) the Final Effective Date does not occur.  In addition, this Agreement shall terminate at the discretion of Lilly as provided in Paragraph 61 or if there is a Court award (or an award as modified on appeal)

increasing the total of all amounts to be paid by Lilly to the Settlement Administrator, Plaintiffs' Class Counsel, and Settlement Class Members, through Court order or otherwise, to be greater than Thirteen Million Five Hundred Thousand Dollars ($13,500,000).  The terminating Party must exercise the option to withdraw from and terminate this Agreement, as provided in this Section XII, by a signed writing served on the other Parties no later than 60 days after receiving notice of the event prompting the termination, or the time period applicable to Paragraph 61.  If Lilly opts to terminate this Agreement as set forth in this Paragraph 94, neither Plaintiffs' Class Counsel nor Settlement Class Members will be obligated to refund Lilly for any costs already incurred by the Settlement Administrator in execution of this agreement prior to the termination.

95.     In the event that, at any time after entry of the Final Judgment, the Settlement Class Members' Release or any portion or provision thereof, shall for any reason be held in whole or in part to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision, or portion thereof, if Lilly, in its sole discretion, elects in writing to proceed as if such invalid, illegal, or unenforceable provision, or portion thereof, had never been included in this Agreement.

96.     If an option to terminate this Agreement arises under this Section XII, (a) neither Lilly nor Plaintiffs are required for any reason or under any circumstance to exercise that option and (b) any exercise of that option by any Party shall be in good faith.

97.     If, but only if, this Agreement is terminated pursuant to this Section XII, then, subject to the proviso at the end of this Paragraph 97:

> a.     This Agreement shall be null and void and shall have no force or effect, and no Party to this Agreement shall be bound by any of its terms, except for the terms of Section XII herein;

b.      The Parties will petition the Court to have any stay orders entered pursuant to this Agreement lifted;

c.      All of its provisions, and all negotiations, statements, and proceedings relating to it shall be without prejudice to the rights of Lilly, Plaintiffs, or any Settlement Class Member, all of whom shall be restored to their respective legal positions existing immediately before the execution of this Agreement, except that the Parties shall cooperate in requesting that the Court set a new scheduling order such that no Party's substantive or procedural rights are prejudiced by the settlement negotiations and proceedings;

d.      The Released Party expressly and affirmatively reserves and does not waive all defenses, arguments, and motions as to all claims, causes of action, or remedies that have been sought or might later be asserted in the Action, including, without limitation, any argument or position opposing class certification and any and all defenses to the claims in the Action, liability, or damages;

e.      Plaintiffs and all other Settlement Class Members, on behalf of themselves and their heirs, assigns, executors, administrators, predecessors, successors, and representatives expressly and affirmatively reserve and do not waive all motions as to, and arguments in support of, all claims, causes of actions or remedies that have been or might later be asserted in the Action, including, without limitation, any argument concerning class certification, and treble or other damages;

- 35 -

f.    Neither this Agreement, nor the fact of its having been made, nor the negotiations leading to it, nor any discovery or action taken by a Party or Settlement Class Member pursuant to this Agreement shall be admissible, entered into evidence, or used in litigation for any purpose whatsoever, apart from enforcement of the Release set forth in Section VI;

g.    The Parties agree they will jointly seek and include in the proposed Final Approval Order a ruling that, in the event the Settlement is terminated pursuant to Section XII of the Agreement, all order(s) and/or judgment(s) entered relating to this Settlement shall be deemed vacated and without any force or effect (including, if applicable, but not limited to, the Preliminary Approval Order, the Final Approval Order, and the Final Judgment); and

h.    All Settlement Implementation Expenses incurred in connection with the Settlement up to the date of termination will be paid from funds available for the Settlement Fund pursuant to the terms and conditions set forth in Paragraphs 36, 44, and 45 above.

## XIII.   GENERAL MATTERS AND RESERVATIONS

98.    Lilly has denied and continues to deny each and all of the claims and contentions alleged in the Action, and has denied and continues to deny that it has committed any violation of law or engaged in any wrongful act that was alleged, or that could have been alleged, in the Action. Lilly believes that it has valid and complete defenses to the claims asserted against it in the Action and denies that it committed any violations of law, engaged in any unlawful act or conduct, or that there is any basis for liability for any of the claims that have been, are, or might have been alleged in the Action.  Lilly further believes that no class could be certified or maintained for litigation or

for trial.  Nonetheless, Lilly has concluded that the Action should be fully and finally settled as to Lilly upon the terms and conditions set forth in this Agreement, as have Plaintiffs.

99.     If the Final Effective Date does not occur, or if the Settlement is terminated pursuant to Section XII above, then the Settlement Agreement, and the certification of the Settlement Class provided for herein, will be vacated and the Action shall proceed as though the Settlement Class had never been certified, without prejudice to any Party's position on the issue of class certification or any other issue.  Certification of the Settlement Class is also without prejudice to any position asserted by any Party in any other proceeding, case or action, as to which all their rights are specifically preserved.

100.     This Settlement Agreement, including, but not limited to, its exhibits, whether or not it shall become final, and any and all negotiations, documents and discussions associated with it, is not and shall not be deemed or construed to be an admission, adjudication or evidence of any violation of any statute or law or of any liability or wrongdoing by the Released Party or of the truth of any of the claims or allegations alleged in the Action or the incurrence of any damage, loss or injury by any Person.  In the event that the Settlement does not become final or is terminated in accordance with the terms hereof, then this Agreement, including its exhibits, and any and all negotiations, documents and discussions associated with it and the releases set forth herein, shall be without prejudice to the rights of any Party and shall not be offered or received in evidence in any proceeding.  Further, this Agreement, the Final Approval Order, and the Final Judgment are not and shall not be deemed or construed to be an admission, adjudication, or evidence of any lack of merit of any of the claims or defenses asserted in the Action.  The Parties agree that this Agreement, including its exhibits, the Final Approval Order, and the Final Judgment, whether or not it shall become final, and any and all negotiations, documents and discussions associated with

it, (a) shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by the Released Party, or of the truth of any of the claims or defenses, or the incurrence of any damage, loss or injury by any Person, or of any lack of merit of any of the claims asserted in the Action or that any class could be certified or maintained for litigation or trial; and (b) shall not be discoverable or used directly or indirectly, in any way, whether in the Action, the Court, or any other action or proceeding of any nature, whether by the Settlement Class or Opt-Outs or anyone else, except if warranted by existing law in connection with a dispute under this Agreement or an action in which this Agreement is asserted as a defense. Nor shall this Agreement serve as precedent in any manner, including regarding certification of a class in any other case, because the Agreement is based on the specific facts of this matter and is for settlement purposes only.

101.    The Parties and their counsel agree to keep the existence and contents of this Agreement confidential until the date on which the Preliminary Approval Order is filed; provided, however, that this Section shall not prevent Lilly from disclosing such information, prior to the date on which the Preliminary Approval Order is filed, to state and federal agencies, independent accountants, actuaries, advisors, financial analysts, insurers, or attorneys or if required by law or regulation.  Nor shall the Parties and their counsel be prevented from disclosing such information to persons or entities (such as experts, courts, co-counsel, and/or administrators) to whom the Parties agree in writing disclosure must be made in order to effectuate the terms and conditions of this Agreement.

102.    Lilly's execution of this Agreement shall not be construed to release—and Lilly expressly does not intend to release—any claim Lilly may have or make against any insurer for

any cost or expense incurred in connection with this Settlement, including, without limitation, for attorneys' fees and costs.

103.     Plaintiffs' Class Counsel represent that (a) they are authorized by Plaintiffs to enter into this Agreement with respect to the claims in this Action; and (b) they are seeking to protect the interests of the Settlement Class.

104.     Plaintiffs' Class Counsel further represent that Plaintiffs (a) have agreed to serve as representatives of the Settlement Class proposed to be certified herein; (b) are willing, able, and ready to perform all of the duties and obligations of representatives of the Settlement Class, including, but not limited to, being involved in discovery and fact-finding; (c) have authorized Plaintiffs' Class Counsel to execute this Agreement on their behalf; and (d) shall remain and serve as representatives of the putative class until the terms of this Agreement are effectuated, this Agreement is terminated in accordance with its terms, or the Court at any time determines that said Plaintiffs cannot represent the Settlement Class.

105.     Lilly represents and warrants that the individual executing this Agreement is authorized to enter into this Agreement on its behalf.

106.     This Agreement, complete with its exhibits, sets forth the sole and entire agreement among the Parties with respect to its subject matter, and it may not be altered, amended, or modified except by written instrument executed by Plaintiffs' Class Counsel and Lilly's Counsel on behalf of Lilly.  The Parties expressly acknowledge that no other agreements, arrangements, or understandings not expressed in this Agreement exist among or between them, and that in deciding to enter into this Agreement, they rely solely upon their judgment and knowledge.  This Agreement supersedes any prior agreements, understandings, or undertakings (written or oral) by and between the Parties regarding the subject matter of this Agreement.

107.    This Agreement and any amendments hereto shall be governed by and interpreted according to the law of the State of Delaware, notwithstanding its conflicts of law provisions.

108.    Whenever this Agreement requires or contemplates that one of the Parties shall or may give notice to the other, notice shall be provided by email and/or next-day (excluding Saturdays, Sundays and Federal Holidays) express delivery service as follows:

      a.      If to Lilly, then to:

    Melissa A. Geist
    Julia A. Lopez
    Reed Smith LLP
    506 Carnegie Center, Suite 300
    Princeton, NJ 08540
    Tel. 609-514-5978
    mgeist@reedsmith.com
    jalopez@reedsmith.com

    and

    Robert B. Ellis, P.C.
    Diana M. Watral, P.C.
    Kirkland & Ellis LLP
    300 North LaSalle
    Chicago, Illinois 60654
    Tel. 312-862-2309
    rellis@kirkland.com
    diana.watral@kirkland.com

      b.      If to Plaintiffs, then to:

    James E. Cecchi
    Lindsey H. Taylor
    Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C.
    5 Becker Farm Rd.
    Roseland, NJ 07068
    Tel. 973-994-1700
    JCecchi@carellabyrne.com
    ltaylor@carellabyrne.com

    and

Steve W. Berman
Hagens Berman Sobol Shapiro LLP
1301 Second Ave., Suite 2000
Seattle, WA 98101
Tel. 206-623-7292
Steve@hbsslaw.com

109.    All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided.  In computing any period of time prescribed or allowed by this Agreement or by order of the Court, the day of the act, event, or default from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a Federal Holiday, or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the office of the clerk of the court inaccessible, in which event the period shall run until the end of the next day that is not one of the aforementioned days.  As used in this Section XIII "Federal Holiday" includes New Year's Day, Birthday of Martin Luther King, Jr., Presidents' Day, Memorial Day, Juneteenth, Independence Day, Labor Day, Indigenous Peoples' Day, Veterans' Day, Thanksgiving Day, Christmas Day, and any other day appointed as a holiday by the President, the Congress of the United States, or the Chief Judge or the Clerk of the United States District Court for the District of New Jersey.

110.    The Parties reserve the right, subject to the Court's approval, to agree in writing to any reasonable extensions of time that might be necessary to carry out any provision in this Agreement.

111.    The Settlement Class, Plaintiffs, Plaintiffs' Class Counsel, Lilly, and Lilly's Counsel shall not be deemed to be the drafter of this Agreement or of any particular provision, nor shall they argue that any particular provision should be construed against its drafter.  All Parties

agree that this Agreement was drafted by counsel for the Parties during extensive arm's-length negotiations.  No parol or other evidence may be offered to explain, construe, contradict, or clarify its terms, the intent of the Parties or their counsel, or the circumstances under which this Agreement was made or executed.

112.   The Parties expressly acknowledge and agree that this Agreement and its exhibits, along with all related drafts, motions, pleadings, conversations, negotiations, and correspondence, constitute an offer of compromise and a compromise within the meaning of Federal Rule of Evidence 408 and any equivalent or analogous rule of evidence in any state.  In no event shall this Agreement, any of its provisions or any negotiations, statements or court proceedings relating to its provisions in any way be construed as, offered as, received as, used as, or deemed to be evidence of any kind or used in any way in the Action, any other action, or any judicial, administrative, regulatory or other proceeding, except in a proceeding to enforce this Agreement or the rights of the Parties or their counsel.  Without limiting the foregoing, neither this Agreement nor any related negotiations, statements, or court proceedings shall be construed as, offered as, received as, used as, or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including, but not limited to, the Released Party, Plaintiffs, or the Settlement Class or as a waiver by the Released Party, Plaintiffs or the Settlement Class of any applicable privileges, claims, or defenses.

113.   The Parties, their successors and assigns, and their counsel undertake to implement the terms of this Agreement in good faith, and to use good faith in resolving any disputes that may arise in implementing the terms of this Agreement.

114.   The waiver by one Party of any breach of this Agreement by another Party shall not be deemed a waiver of any prior or subsequent breach of this Agreement.

115.     If one Party to this Agreement considers another Party to be in breach of its obligations under this Agreement, that Party must provide the breaching Party with written notice of the alleged breach and provide a reasonable opportunity to cure the breach before taking any action to enforce any rights under this Agreement.

116.     The Parties, their successors and assigns, and their counsel agree to cooperate fully with one another in seeking Court approval of this Agreement and to use reasonable efforts to effect the prompt consummation of this Agreement and the proposed Settlement.

117.     This Agreement may be signed electronically or by hand and may be signed in counterparts, each of which shall constitute a duplicate of the original.

118.     In the event any one or more of the provisions contained in this Agreement (besides the Settlement Class Members' Release, which is addressed in Section VI) shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision if Lilly and Plaintiffs' Class Counsel, on behalf of Plaintiffs and Settlement Class Members, mutually agree in writing to proceed as if such invalid, illegal, or unenforceable provision had never been included in this Agreement.  Any agreement to proceed without regard to an invalid, illegal, or unenforceable provision shall be reviewed and approved by the Court before it becomes effective.

-- THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK --

This Settlement Agreement is agreed to on the date indicated below.

APPROVED AND AGREED TO BY PLAINTIFFS' CLASS COUNSEL
AS AUTHORIZED BY PLAINTIFFS

BY _____     DATE: May 26, _____, 2023
JAMES E. CECCHI
LINDSEY H. TAYLOR
CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.

- 44 -

This Settlement Agreement is agreed to on the date indicated below.

APPROVED AND AGREED TO BY PLAINTIFFS' CLASS COUNSEL
AS AUTHORIZED BY PLAINTIFFS

BY _____   DATE: May_____ , 26 , 2023
    STEVE W. BERMAN
    HAGENS BERMAN SOBOL SHAPIRO LLP

This Settlement Agreement is agreed to on the date indicated below.

APPROVED AND AGREED TO BY LILLY'S COUNSEL

BY _____    DATE:  May 26, 2023
     ROBERT B. ELLIS, P.C.
     KIRKLAND & ELLIS LLP