| | |
|---|---|
| James E. Cecchi | Steve W. Berman |
| Donald A. Ecklund | Hannah W. Brennan |
| Kevin G. Cooper | Mark T. Vazquez |
| CARELLA, BYRNE, CECCHI, | HAGENS BERMAN SOBOL |
| BRODY & AGNELLO, P.C. | SHAPIRO LLP |
| 5 Becker Farm Road | 1301 2nd Ave., Suite 2000 |
| Roseland, NJ 07068 | Seattle, WA 98101 |
| (973) 994-1700 | (206) 623-7292 |

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE INSULIN PRICING LITIGATION | Civil Action No. 2:17-cv-00699 (BRM)(RLS) |

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR
MOTION FOR CLASS CERTIFICATION**

Three important developments have occurred since class certification briefing closed. Each undercuts the defendants' arguments and highlights the case for certification. First, the defendants each *admitted*, while slashing list prices, that they are responsible for the harm the consumer plaintiffs allege: their high list prices directly cause patients to pay exorbitant out-of-pocket costs. Second, in *RealPage v. Kelly*, the Third Circuit clarified that courts cannot deny class certification simply because ascertaining the class will require review of individual records, allowing for certification of classes that are more difficult to identify than the one proposed here.[1] Third, a judge in this district certified a considerably more complex class of consumer drug purchasers in *Valsartan*, and the Third Circuit denied the defendants' 23(f) petition on that decision. These three developments strengthen the plaintiffs' motion and make clear that certification here is not only the just result but the correct one.

1. **The defendants admit the proposed class's core allegation: their list prices directly cause the high prices the plaintiffs pay.**

Throughout their briefing, the defendants blame the financial burdens of insulin pricing on everyone else: health plans, PBMs, and astoundingly even the patients themselves. And they assert that high list prices were out of their control. Yet, in March 2023, each defendant cut their list prices dramatically. In their press releases regarding these decisions, the defendants acknowledged that their cuts would have a *direct* and *positive* impact on class members in the form of lower out-of-pocket costs.[2] These pricing announcements undercut the parade of "facts" defendants assert as to the cause and impact of high prices on the class.

2. **The proposed class is readily ascertainable under the Third Circuit's current construction of the requirement.**

After the plaintiffs moved for class certification, the Third Circuit dealt a final blow to the

---

[1] 47 F.4th 202 (3d Cir. 2022).
[2] *See* Exs. 1-3 (Eli Lilly, Novo Nordisk, and Sanofi March 2023 Press Releases).

1

defendants' arguments on ascertainability. In *Kelly*, the plaintiffs alleged that RealPage—a credit reporting agency that offers background checks on rental applicants to potential landlords—disseminated inaccurate "rental reports" and then refused to disclose the sources of those inaccuracies to the rental applicants. The class was defined as individuals who had: (1) requested copies of their rental reports from Real Page and (2) received rental reports containing public record information.[3] Identifying whether a particular individual belonged to the class proved difficult because RealPage stored the data needed to answer questions (1) and (2) in two separate databases "with no 'unique identifier' used across both systems."[4] This lack of unique identifier meant that a claims administrator would have to take the group of people who requested their rental report, per one database, and then "review [each potential class member's report] and determine whether the file contained public record information . . . ."[5] The district court held that "[a] review of each individual file is, of course, not administratively feasible."[6]

The Third Circuit reversed. "[A]scertainability does not mean that '*no* level of inquiry as to the identity of class members can ever be undertaken,' because that would make Rule 23(b)(3) class certification all but impossible."[7] If review of individual plaintiff records yields a "yes-or-no" answer to the class membership inquiry, the class is ascertainable, no matter how large. This "straightforward 'yes-or-no' review of existing records to identify class members is administratively feasible even if it requires review of individual records with cross-referencing of voluminous data from multiple sources."[8] And this is true no matter the volume of records that must be reviewed:

---

[3] *Kelly*, 47 F.4th at 208-09, 223.

[4] *Id.* at 223.

[5] *Kelly v. RealPage, Inc.*, 338 F.R.D. 19, 30 (E.D. Pa. 2020).

[6] *Id.*

[7] *Kelly*, 47 F.4th at 224 (quoting *Byrd v. Aaron's Inc.*, 784 F.3d 154, 171 (3d Cir. 2015), *as amended* (Apr. 28, 2015)) (emphasis in original).

[8] *Id.*

any argument to the contrary "is essentially an objection to the size of the class, which we [the Third Circuit] stated explicitly in *Byrd* is not a reason to deny class certification."[9] "To hold otherwise would be to categorically preclude class actions where defendants purportedly harmed too many people, which would 'seriously undermine the purpose' of a class action to 'vindicate meritorious individual claims in an efficient manner.'"[10]

*Kelly* makes clear that the proposed class here satisfies the Third Circuit's standard. Here, well-maintained data from PBMs, pharmacies, insurers, and coupon administrators can be used to identify class members.[11] Although some cross referencing of data sources may be necessary, *Kelly* sanctions such a methodology. And the size of this class does not pose a barrier.

After *Kelly*, the Third Circuit issued one more decision touching on the ascertainability requirement. In *In re Niaspan Antitrust Litigation*, the appeals court held that the plaintiffs had waived their argument on a potentially viable ascertainability methodology. Before the district court, the plaintiffs claimed they could use PBM data *alone* to sort insurers were self-funded (i.e., insurers that pay for their beneficiaries' health care) from those that were fully-insured (those that do not).[12] When this methodology proved faulty, the plaintiffs raised the possibility of using class member affidavits instead of the data.[13] Because the plaintiffs failed to properly raise this argument before the district court, the Third Circuit held it waived.[14] Nonetheless, in reaching this conclusion, the appeals court was careful to confirm that "an affidavit, in combination with records or other reliable and administratively feasible means, can meet the ascertainability

---

[9] *Id.* (citing *Byrd*, 784 F.3d at 171.).

[10] *Id.* at 225 (quoting *Byrd*, 784 F.3d at 171).

[11] Pls. Opening Class Cert. Br. at 60-67; Ex. 4 to Pls. Opening Class Cert. Br. at Section C.

[12] *In re Niaspan Antitrust Litig.*, 67 F.4th 118, 134 (3d Cir. 2023).

[13] *Id.* at 125-127.

[14] *Id.* at 135-36.

3

standard."[15] The Third Circuit's waiver holding speaks volumes: the Court had an opportunity to reject affidavits as a method of identifying class members and did not.

Here, the class at issue differs significantly from that in *Niaspan* (health insurers versus consumers). And, here, the plaintiffs explained in their opening briefing and exhibits that they will only use an affidavit, in combination with records or other reliable and administratively feasible means, to ascertain class members where the PBM, pharmacy, and health insurer data subpoenaed cannot locate that class member.[16] Finally, here, the plaintiffs will overlap multiple data sources—as opposed to relying on PBM data alone—to identify the class.

### 3. This Court's decision in *Valsartan*—a considerably more complex consumer drug-purchaser class—provides a roadmap to certification in this matter.

*Valsartan* certified a much more complex class from the same data the plaintiffs propose using here. And the Third Circuit subsequently denied the defendants' Rule 23(f) petition.[17] *Valsartan* provides a roadmap to the Court on all of Rule 23's requirements. As the defendants emphasized in *Valsartan*, the *Valsartan* Court will have to conduct a "three-phase class trial involving 93 different consumer subclasses, that [will] require a single jury to decide whether millions of consumers, who purchased 428 distinct varieties of valsartan . . . , from dozens of manufacturers, wholesalers, and pharmacies under multiple warranty, fraud, consumer protection, and unjust enrichment theories of liability implicating the varying laws of 52 states."[18] In contrast to the 428 drugs at issue in *Valsartan*, there are only six at issue here. In contrast to the 93 subclasses at issue in *Valsartan*, plaintiffs here request certification of *only two* nationwide classes (one nationwide class per defendant)—or, in the alternative, ten classes (one multi-state class and

---

[15] *Id.* at 131 (internal alterations omitted).

[16] Ex. 4 to Pls. Opening Class Cert. Br. at 11.

[17] *In re Valsartan Losartan & Irbesartan Prods. Liab. Litig.*, Nos. 23-8005, 23-8006, 23-8007, 23-8008, Order Denying Pets. for Permission to Appeal, Dkt. No. 60 (3d Cir. May 1, 2023).

[18] Defs.' Memo. of Law in Opp'n to Pls.' Mot. for Class Cert. of Consumer Econ. Loss Claims at 1, 1:19-md-02875, ECF No. 2008 (D.N.J. Apr. 12, 2022).

four single-state classes per defendant), where the claims of four of the ten classes will be tried to the court, not the jury. And unlike *Valsartan*, the jury in this case will be presented with only three legal standards (for unfair and unconscionable acts). In contrast to *Valsartan*, the question this case poses is simple: did a consumer pay some portion of the defendants' list price and did the defendants unfairly or unconscionably set that list price?

While the entirety of *Valsartan* bears relevance here, the Court's holdings on commonality, typicality, predominance, and ascertainability carry particular weight. On commonality, the Court explained that subdividing class members "into groupings . . . according to state law standards moves the needle toward a showing of commonality."[19] As to typicality, the Court relied on *Boley* the same way the plaintiffs advocate here.[20] And on predominance, the Court held, "[s]ince each parties' economic loss theory reduces or expands the importance of individualized fact questions over common ones, choosing one theory over the other drives a decision as to predominance that bounds too deeply into the province of the factfinder."[21] Therefore, to avoid intruding on the province of the jury, the Court selected "a practical approach to predominance: to confirm that subclasses aptly map the reality of state law variation and factual variability."[22] Finally, as to ascertainability, the *Valsartan* plaintiffs planned to link data from many of the same sources— PBMs, pharmacies, and insurers—as the plaintiffs propose here. The Court recognized that *RealPage* "made clear that, if the data exist to reasonably identify class members, then having to link disparate kinds of data to more accurately name all possible, putative members cannot be the reason to fail ascertainability"; "feasible, and not perfect, ascertainability is the standard."[23]

---

[19] *In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*, No. 19-2875 (RBK/SAK), 2023 WL 1818922, at *9 (D.N.J. Feb. 8, 2023).

[20] *Id.* at *10 (citing *Boley v. Universal Health Services, Inc.*, 36 F.4th 124 (3d Cir. 2022)).

[21] *Id.* at *15.

[22] *Id.*

[23] *Id.* at *24.

5

DATED: November 20, 2023                           Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP                    CARELLA, BYRNE, CECCHI,
                                                   BRODY & AGNELLO, P.C.

*/s/ Steve W. Berman*
Steve W. Berman                                    */s/ James E. Cecchi*
1301 2nd Avenue, Suite 2000                        James E. Cecchi
Seattle, WA 98101                                  Donald A. Ecklund
Telephone: (206) 623-7292                          Kevin G. Cooper
Facsimile: (206) 623-0594                          5 Becker Farm Road
steve@hbsslaw.com                                  Roseland, NJ 07068
                                                   Telephone: (973) 994-1700
Thomas M. Sobol                                    Facsimile: (973) 994-1744
Hannah W. Brennan                                  jcecchi@carellabyrne.com
55 Cambridge Parkway, Suite 301                    decklund@carellabyrne.com
Cambridge, MA 02142                                kcooper@carellabyrne.com
Telephone: (617) 482-3700
Facsimile: (617) 482-3003
tom@hbsslaw.com
hannahb@hbsslaw.com

Mark T. Vazquez
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4962
Facsimile: (708) 628-4952
markv@hbsslaw.com

*Attorneys for Plaintiffs and Interim Co-Lead Counsel for the Class*